BARBARA JEAN FOSTER BOGER, PLAINTIFF v. BOBBY EUGENE BOGER, DEFENDANT

No. 9021DC213

(Filed 2 July 1991)

**Divorce and Separation § 129 (NCI4th)— equitable distribution— increase in pension benefits for early retirement—separate property**

An increase in the husband's pension benefits after the date of separation because of his election to participate in an early retirement incentive plan offered by his employer was separate rather than marital property where the early retirement option was offered only after the parties separated, and the husband was not eligible for early retirement without additional service after the date of separation, since the increase was not vested as of the date of separation and was compensation for lost future earnings.

**Am Jur 2d, Divorce and Separation §§ 880, 905, 906.**

**Pension or retirement benefits as subject to award or division by court in settlement of property rights between spouses. 94 ALR3d 176.**

APPEAL by defendant from order entered 5 September 1989 by *Judge R. Kason Keiger* in FORSYTH County District Court. Heard in the Court of Appeals 23 October 1990.

*Forsyth Legal Associates, by William L. Durham, for plaintiff-appellee.*

*Law Firm of Victor M. Lefkowitz, by Geoffrey C. Mangum, and Victor M. Lefkowitz, for defendant-appellant.*

PARKER, Judge.

At issue in this appeal are the classification, for purposes of equitable distribution, of post-separation pension benefits and the

proper application of N.C.G.S. § 50-20(b)(3) governing the distribution of pension benefits. The parties separated on 1 December 1986, and plaintiff filed her suit for absolute divorce and equitable distribution of marital property on 26 January 1988. A judgment of absolute divorce was entered on 2 March 1988, and thereafter the equitable distribution proceedings were heard on 27 and 28 July 1989.

The husband appeals the distribution of that portion of his pension benefits increased after the date of separation by his election to participate in an early retirement incentive plan offered by his employer several years after the date of marital separation. The husband would have us characterize such an increase as compensation for lost *future* earnings, distinguishing the increase from the pension rights vested as of the date of separation, which are properly characterized as deferred compensation and hence "marital" property. Characterizing the amount of the increase received in exchange for early retirement as lost future earnings would put the amount within the category of "separate" property under the Equitable Distribution Act, N.C.G.S. §§ 50-20 *et seq.* ("the Act").

The husband has worked for R.J. Reynolds ("RJR") since 1959. RJR was acquired in a leveraged buy-out after the date of the parties' separation. About two years after that separation the new management, as part of a program to reduce the wage force, offered senior employees significantly higher pension benefits if those employees would agree to retire on 1 July 1990. Employees needed a combined age and years of service of 81.5 in order to qualify for this incentive retirement option. Defendant reached the 81.5 eligibility figure about five months after his separation from plaintiff.

The value of defendant's vested RJR retirement benefits as of the date of marital separation was around $929.00 per month for retirement at age sixty-five, or $349.00 for retirement taken after age fifty-five. Absent any retirement incentive plan, the husband would have been eligible, according to the testimony of RJR's Retirement Plans Administrative Assistant at the distribution proceeding, for a monthly annuity of $1,056.27. But in April 1989 the husband had elected early retirement under the new employee incentive plan, giving up his job and salary of $50,000.00 a year for a monthly benefit of $1,639.02 from age fifty-six to age sixty-two were he to choose the highest monthly benefit, a single life annuity

option. After age sixty-two his RJR pension was to be offset by the estimated amount of his Social Security benefits.

At the distribution hearing the parties contested the monthly pension amount to which a stipulated "coverture fraction" was to be applied. The judge specifically asked the Retirement Plans Administrative Assistant if a "sweetener package [w]as . . . something that was added to the retirement plan by the Company after [the employee] separated from his wife" and not "something that was built into the plan." The RJR witness confirmed that the early retirement option at a much higher monthly annuity had been added to RJR's retirement plan well after the date of the marital separation. The husband contends that the stipulated percentage applies only to his pension rights vested as of the date of separation, and not to the amount of the increase afforded by his election to retire early under an RJR plan offered to the husband more than two years after the date of separation and about one year after the divorce. The wife argues that she has a distributive interest in the early retirement incentive benefits as well, and that the trial court had the power to make such an award.

In its 5 September 1989 order distributing the marital property, the district court judge found that the parties had stipulated to a 40% distribution to the wife of the husband's retirement benefits and that the husband was to begin receiving his RJR pension on 1 July 1990. The court noted that the parties disagreed as to the amount to which the percentage factor was to be applied. In describing the early retirement incentive offered to the husband by RJR, the court found that:

> Provision for the larger monthly annuity came into effect subsequent to the time of the parties' separation and was noncontributory other than continued employment, and, although the actual increase in retirement annuity came into effect after the date of separation, the Court does find that the substantial portion of the retirement came about during the 25.32 years of marriage.

In that same order the court's third Conclusion of Law stated that:

> [T]he plaintiff's entitlement to the defendant's pension as [set] forth is appropriate, taking into consideration what this Court believes to be the intent of the legislature in establishing the

**BOGER v. BOGER**

[103 N.C. App. 340 (1991)]

equitable distribution law, and that to deprive the plaintiff of the additional portion of the defendant's retirement which came about following the defendant's date of separation [from plaintiff] would defeat the thrust of the legislature in enacting this equitable distribution law.

The judge's Qualified Domestic Relations Order, pertaining only to retirement/pension benefits, calculated the total number of marital years applicable to the wife's interest in defendant's pension rights and arrived at a 35.71% formula for her entitlement to the base benefit plus the early retirement increase that defendant would begin receiving by reason of his early retirement. The court recited that it had "considered all of the factors in G.S. 50-20 in arriving at this percentage."

On appeal the wife argues that she is entitled to the judge's award of 35.71% of any retirement/pension benefits received by her ex-husband. She argues that the benefits vested once her husband had worked the ten years required for vesting of pension rights at RJR and that the judge correctly treated the post-separation increase in the husband's pension as a mere "distributional factor" under N.C.G.S. §§ 50-20(c)(11a) and (12). We disagree with plaintiff that case law compels, or even suggests, this result. *Truesdale v. Truesdale*, 89 N.C. App. 445, 450, 366 S.E.2d 512, 514 (1988), the case relied on by plaintiff, announced that passive post-separation appreciation of a marital home after the date of separation was neither marital nor separate property but rather a distributional factor.

The present case does not involve mere passive appreciation of an asset incapable of classification. Rather, it calls upon this Court to decide for the first time whether the increased component of a retirement annuity, offered to a spouse only after separation and for which the spouse was not eligible without additional service after the date of separation, should be classified as "separate" property for purposes of equitable distribution. We hold that the increase, which vested only after the date of separation, is separate property. *See Hall v. Hall*, 88 N.C. App. 297, 307, 363 S.E.2d 189, 195-96 (1987) (nonvested stock options considered separate property because contingent on continued employment after date of separation). Judicial classification of property prior to distribution is governed by the Act and the case law interpreting the Act. The early retirement option did not exist at the time the parties separated;

nor had the husband worked long enough for RJR, as of the date of separation, to have been qualified for the incentive increase offered to him much later. Hence his interest in the annuity increase could not have "vested" as of the date of separation.

Vesting is crucial in distinguishing between marital and separate property under N.C.G.S. §§ 50-20(b)(1) and (2). Since its amendment in 1983, the Act has defined "all vested pension, retirement, and other deferred compensation rights" as marital property. N.C.G.S. § 50-20(b)(1) (1987). Similarly, the Act dictates that "[t]he expectation of nonvested pension, retirement, or other deferred compensation rights shall be considered separate property." N.C.G.S. § 50-20(b)(2). Furthermore, the section on distribution after classification specifically directs that "[t]he [distributive] award *shall* be based on the vested accrued benefit, as provided by the plan or fund, calculated as of the date of separation, and *shall not* include contributions, years of service or compensation which may accrue after the date of separation." N.C.G.S. § 50-20(b)(3) (emphasis added). Although the Act endows the trial judge with wide discretion in considering a host of "distributional factors," including separate property, in making the final distribution award under N.C.G.S. § 50-20(c), that discretion does not reach an attempt under N.C.G.S. §§ 50-20(c)(11a) and (12) to rewrite N.C.G.S. § 50-20(b)(3).

This Court interpreted the term "vesting" in *Milam v. Milam*, 92 N.C. App. 105, 373 S.E.2d 459 (1988), *disc. rev. denied*, 324 N.C. 247, 377 S.E.2d 755 (1989), by expressly adopting the interpretation used in a sister state: " ' "[v]esting" occurs when an employee has completed the minimum terms of employment necessary to be entitled to receive retirement pay at some point in the future. . . .' " *Id.* at 106-107, 373 S.E.2d at 460 (quoting *In re Marriage of Grubb*, 745 P.2d 661, 664 (Colo. 1987) (*en banc*)). *Milam* decided its vesting problem in the context of the Act by asking when the employee's pension rights were "guaranteed."

Unlike the employee in *Milam*, however, the husband in this case was not "guaranteed" the increased annuity at the time of separation. Under the incentive plan he was eligible for the retirement incentive only after the combination of his age and years of service totalled 81.5 years, which did not occur until some five months after the date of separation. But that "eligibility" did not exist at all until the company created and offered the incentive plan to senior employees some two years after the date of separation.

BOGER v. BOGER

[103 N.C. App. 340 (1991)]

This Court's decision that the husband's increased annuity could not have been vested as of the date of separation is in accord with the most closely analogous decisions in this State. *Hall*, 88 N.C. App. 297, 363 S.E.2d 189 (1987) (stock options acquired after the date of separation not deemed to be vested upon separation and hence not marital property); *Foster v. Foster*, 90 N.C. App. 265, 368 S.E.2d 26 (1988) (proceeds from husband's life insurance policy on couple's son did not vest until accidental death of son three months after the couple separated and, therefore, were not "acquired" before the date of separation or "owned" at the date of separation, as required by N.C.G.S. § 50-20(b)(1), even though the insurance policy had been purchased with marital funds), *disc. rev. improvidently allowed*, 324 N.C. 245, 376 S.E.2d 739 (1989).

In addition to interpreting the language of the Act, we have been directed to apply the "analytic" approach adopted in *Johnson v. Johnson*, 317 N.C. 437, 450-51, 346 S.E.2d 430, 438 (1986) ("After weighing the relative strengths and weaknesses of both the mechanistic and the analytic approaches, we are of the opinion that the latter is the better reasoned."). The analytic approach looks to the individual components of property to be classified (in the *Johnson* case, a personal injury award) rather than to application of a literal, mechanistic reading of the statutory definitions of marital and separate property. *Id.* at 446, 346 S.E.2d at 435. Using the analytic approach we can describe the incentive increase in pension benefits in this case as compensation for the loss of *future* earnings. The Act expressly prohibits distribution of that part of a spouse's income earned after the date of separation. N.C.G.S. § 50-20(b)(3).

Analysis of benefits accrued by reason of election of early retirement as compensation for loss of future earnings fully supports "the policy behind G.S. 50-20 [as] basically one of repayment of contribution." *Hinton v. Hinton*, 70 N.C. App. 665, 669, 321 S.E.2d 161 (1984). We hold, therefore, that the trial court erred in distributing the portion of the pension representing compensation for future earnings lost through early retirement, in direct violation of N.C.G.S. § 50-20(b)(3). Because the trial court included the increase in the monthly benefit in the Qualified Domestic Relations Order to be sent to RJR-Nabisco under paragraph four of the order dated 5 September 1989, we remand the case with directions that the court issue a new order as to the distribution of husband's

pension benefits, awarding the wife a 35.71% share of only the pension rights that were vested as of the date of separation.

Reversed and remanded.

Judges JOHNSON and EAGLES concur.