859 P.2d 479

**Wana FRANKLIN, now Wana Milam, Petitioner–Appellant,**

v.

**Harold Clifford FRANKLIN, Respondent–Appellee.**

**No. 14333.**

Court of Appeals of New Mexico.

June 25, 1993.

Certiorari Denied Aug. 12, 1993.

Jerry A. Lewis, Hobbs, for petitioner-appellant.

James E. Templeman, Templeman and Crutchfield, Lovington, for respondent-appellee.

## OPINION

PICKARD, Judge.

This case involves the formula for dividing periodic payments of a retirement plan that was being distributed pursuant to a "pay as it comes in" basis as provided in an earlier divorce decree. The parties were married in 1950 and divorced in 1983. The division of the parties' community property in the 1983 divorce decree awarded Wife "[a]n undivided ½ of [Husband's] interest in the Employee Retirement Income Plan of El Paso Company ["the Plan"] as of January 10, 1983, with the benefits to be paid to [Wife] as they become due and payable under the terms of the Plan." Husband was awarded an identical interest, as well as "all rights accruing after January 10, 1983," in the Plan. No value was placed on the Plan in the divorce decree, nor was a qualified domestic relations order regarding the Plan ever prepared.

The parties never appealed the divorce decree. However, after Husband retired on August 1, 1988, Wife objected to the

amount of pension benefits Husband was paying her for her share of the Plan. Accordingly, Wife filed a petition to enforce the decree. Wife appeals the trial court's judgment regarding the petition.

Wife raises two issues on appeal. She first contends that the trial court as a matter of law applied the wrong formula to determine Wife's share of the community interest in the Plan under a pay as it comes in method of distribution. Specifically, she claims that the trial court erred in (1) applying an income adjustment that factored in Husband's salary average at the time of divorce rather than the salary average that was actually applied to calculate Husband's share of the Plan upon his retirement, and (2) applying two early-retirement penalties against Wife that were not imposed against Husband in computing his share of the Plan. Wife's second issue is that the trial court erred in characterizing the $62,864.16 that Husband received as a lump sum severance payment as Husband's separate property. Based on the record presented, we affirm on the trial court's use of Husband's salary at the time of divorce and characterization of the lump sum severance as separate property. We reverse the trial court's inclusion of the hypothetical penalties in the calculation of Wife's portion of the pension benefits.

*FACTS*

Husband worked for El Paso Natural Gas Company during and after his marriage to Wife. The parties do not contest that Wife is entitled to half the benefits accrued under Husband's defined benefit plan for the coverture period. What is contested is the appropriate formula to compute Wife's community interest and Husband's separate interest. Under the terms of the Plan, a determination of benefits is based on the age of the employee at the time of retirement, the number of credited years of service, and the employee's final average monthly compensation. At the time of divorce, Husband was not quite 53 years old and had accrued 23.9167 years of credited service with El Paso Natural Gas Company. When Husband retired, he was 58 years and 4 months old, and he had accrued 29.4163 years of credited service. Husband's final average monthly compensation at the time of divorce was $2689.47, and it was $3989.51 at the time of his retirement. The Plan was fully vested at the time of divorce.

After Husband retired, he received two different amounts of benefits, one amount for the first four years of retirement and a second amount once Husband became eligible for Social Security benefits. The reason for the different amounts is that the Plan contemplated a reduction in benefits according to a certain formula once Social Security benefits became available. It would unduly complicate this opinion to fully explain the different formulas; therefore, we will utilize the first four years to explain the facts. Similarly, there were minor discrepancies in the testimony concerning some of the numbers. Again, rather than fully explaining the discrepancies and the probable reasons for them, we will use the figures that are supported by the evidence in the light most favorable to the judgment or those figures that are not challenged on appeal.

The basic elements of the Plan are as follows. The normal retirement benefit is 1.83% times the final average monthly compensation times the years of credited service up to thirty years. However, benefits are reduced for early retirement. Benefits are reduced by 2% for each year that commencement of benefits precedes age 65 or 2% for each year of credited service less than 30, whichever produces the greater benefit, provided that the minimum reduction in any case is 2% for each year an employee retires before age 60. We will call these reductions the standard penalties. In addition, employees are not eligible to retire until age 55, and if they leave the company before that age, they cannot begin to collect benefits until age 55 and then in vastly reduced percentages. We will call this reduction the ineligibility penalty.

It appears that when El Paso Natural Gas Company calculated Husband's actual pension upon his actual date of retirement, it applied the basic pension formula plus a

standard penalty of 3.3% for retiring one and two-thirds years short of age 60. By applying the following formula, this Court has arrived at an almost identical pension benefit to the one that Husband actually received upon retirement:

$$1.83\% \times \$3989.51 \times 29.4163 \times 96.7\% = \$2076.75.$$

Explanations for the numbers used in this formula are as follows:

(1) 1.83% is the multiplier applied to all pension calculations, (2) $3989.51 is Husband's final average compensation when he retired, (3) 29.4163 is the number of credited years of service, and (4) 96.7% is 100% minus the standard reduction for retiring one and two-thirds years short of age 60.

Wife asserts that this Court should apply the following formula, referred to by Wife as a straight coverture fraction, in determining Wife's share of the Plan:

$$50\% \times 0.813042 \times \$2076.75 = \$844.24.$$

Explanations for the numbers used in this formula are as follows:

(1) 50% represents Wife's half of the community interest, (2) 0.813042 represents the amount of time that Husband participated in the Plan during the marriage (23.9167 years) divided by the total amount of time that Husband participated in the Plan both during and after the marriage (29.4163 years), and (3) $2076.75 is the actual benefit that Husband received upon retirement.

The straight coverture fraction formula that Wife proposes is based on a percentage of Husband's actual benefits. Therefore, under this formula, Wife's benefit is based on the same salary and the same early-retirement penalties that were actually used in calculating Husband's benefit. The only reductions inherent to this formula are (1) dividing the community interest by 50%, and (2) applying a service years adjustment to reduce Wife's share proportionate to the number of years Husband was employed by El Paso Natural Gas Company during the marriage.

The trial court did not adopt Wife's formula and instead adopted the pension cal-culations of Husband's expert witness, bank trust officer Rita Neal. Instead of $844.24, the trial court adopted Neal's figure of $244.76 for Wife's monthly share for the first four years of retirement, as well as the figure of $170.21, once the factor for Social Security was applied. In adopting these figures, the trial court limited Wife's share to what Husband "would have received had he terminated his employment on January 10, 1983 and begun receiving plan benefits on August 1, 1988 subject to all factors which reduce plan benefits, such as early retirement and receipt of social security benefits."

An examination of Neal's first calculation demonstrates how she interpreted the Plan, as well as the penalties Neal imposed in order to reduce Wife's share to $244.76. Neal interpreted the Plan to require imposition of the following formula to calculate Wife's share at the time of divorce:

$$1.83\% \times \$2689.47 \times 23.9167 \times 0.662819 \times 0.612876 \times 50\% = \$239.09.$$

Explanations for the numbers used in this formula are as follows:

(1) 1.83% is the multiplier applied to all pension calculations; (2) $2689.47 is the figure supplied by El Paso Natural Gas Company as Husband's average monthly compensation at the time of divorce; (3) 23.9167 is the number of credited years of service accrued during the marriage; (4) 0.662819 is a reduction for years of credited service, which is calculated by dividing 23.9167 (the years of credited service in the Plan accrued during the marriage) by 36.-0833 (the years of credited service that Husband would have accrued if he worked until age 65); (5) 0.612876 is the ineligibility penalty, which Neal calculated as the percentage of vested benefits payable at Husband's actual retirement age of 58 years and 4 months had he retired on the date of divorce, before he was eligible to retire; and (6) 50% reflects the division of Wife's share of the community interest. Neal adjusted the $239.09 figure upward to $244.76 for reasons not relevant to the issues on appeal. Thus, in addition to us-

ing Husband's average salary at the date of divorce, Neal's calculations reduced Wife's share by imposing two penalty adjustments, one for credited years of service based on the hypothetical retirement age of 65, and one for retiring prior to age 55 but beginning to collect benefits at the actual age of retirement, 58 years and 4 months.

The facts relating to the severance pay issue are that Husband received a lump sum of money when he retired. Husband testified that his decision to retire early was involuntary and that he did not want to retire. El Paso Natural Gas Company paid Husband $62,864.16 in severance pay for the elimination of his position and Husband's resulting early retirement. In addition, the trial court determined that there was "no correlation between [Husband's] entitlement to the severance pay he was awarded by his employer and his Employee Retirement Income Plan." According to Neal's testimony, the severance pay was not a retirement benefit because (1) the company's severance plan also included employees who were not entitled to any pension benefits, (2) the severance pay was not included in determining the pension benefits, (3) Husband received no inducement for credited service in exchange for the lump sum severance payment, and (4) El Paso Natural Gas Company complied with all the Internal Revenue Code requirements in order for a payment not to be considered a retirement plan.

## RETIREMENT PLAN

■ The parties have not clearly identified their arguments regarding the pension formulas for this Court. However, the parties do not appear to dispute that New Mexico is a deferred distribution jurisdiction, nor do they dispute that the language in the divorce decree involves a pay as it comes in distribution method. It is well settled that *Schweitzer v. Burch*, 103 N.M. 612, 711 P.2d 889 (1985), modified *Copeland v. Copeland*, 91 N.M. 409, 575 P.2d 99 (1978), to the extent that unless the parties agree to the offset method, the trial court no longer has discretion to impose an offset approach. *See Schweitzer*, 103 N.M. at 615, 711 P.2d at 892; *see also Ruggles v.*

*Ruggles*, 114 N.M. 63, 64–65, 834 P.2d 940, 941–42 (Ct.App.), *cert. granted* (N.M. May 29, 1992) (No. 20,547); *Mick v. Mick*, 114 N.M. 174, 175, 836 P.2d 93, 94 (Ct.App.), *cert. granted* (N.M. July 9, 1992) (No. 20,-639). Nor does Husband dispute Wife's contention that she did not waive her undivided one-half interest in Husband's pension.

Wife asserts that the trial court erred in not applying a straight coverture fraction, which adjusts only for marital service years. Wife also appears to contend that the trial court erred in applying two additional types of adjustments to Wife's share of the community interest in the Plan, the early-retirement reductions, consisting of the standard and ineligibility penalties, and the income adjustment, consisting of Husband's final average monthly salary as of the date of divorce rather than as of the date of his actual retirement. In addition, Wife appears to be arguing that the trial court, in effect, retroactively imposed an offset approach on the Wife by calculating her share with a formula that applied these adjustments. The practical effect of such a formula is to impose all the negative qualities of an offset approach (the risks associated with the uncertainties of an unknown date of the employee-spouse's actual termination or retirement and the unknown amount of the employee-spouse's actual pension benefits) and none of its advantages (severing the need for future contact or litigation between spouses and receipt of a lump sum award which can be invested for future earnings). *See Schweitzer*, 103 N.M. at 615, 711 P.2d at 892; Phoebe Carter & John Myers, *Division and Distribution of the Community Interest in Defined Benefit Pensions: Schweitzer Reconsidered*, 18 N.M.L.Rev. 95, 110–15 (1988).

Husband argues that the trial court's computations accurately reflect the need to reduce the nonemployee-spouse's share of the pension to the extent that the marital community did not participate in the Plan. Husband also appears to contend that this nonparticipation and corresponding lack of entitlement to benefits includes not only

the accepted adjustment for service years but also the contested early-retirement penalties and the income adjustment.

■ First, we address the trial court's imposition of the early-retirement penalties against Wife's share of the community interest in the Plan. The divorce decree failed to set a value on the pension and failed to specify a formula to be used in making the calculations. The formula used to calculate Wife's share imposed two early-retirement penalties based on the assumption that Husband had terminated employment on the date of divorce. Such a postdivorce, postretirement assumption is needlessly speculative because Husband's actual retirement date and the actual amount of Husband's pension benefits are known facts. To impose hypothetical retirement penalties on Wife that were not actually imposed on Husband runs counter to the rationale relied on by the Supreme Court in *Schweitzer* when it decided that all pension benefits are to be paid on a pay as it comes in basis unless the parties agree to the contrary. *See Schweitzer*, 103 N.M. at 615, 711 P.2d at 892. *Schweitzer* was intended to prevent the unfair imposition of uncertainties and risks on one party at the expense of that party, such as hypothetical estimates of when pension payments would actually be made, how much the payments would actually be, and how many payments would actually be received by the parties. *See id.*

In the context of a permissible offset application, this Court in *Mattox v. Mattox*, 105 N.M. 479, 483, 734 P.2d 259, 263 (Ct. App.1987), refused to value a pension based on a hypothetical termination date that would invoke significant early-retirement penalties. The bases for this Court's refusal were (1) the employee-spouse presented no evidence to support the assumption of early retirement, (2) to impose such penalties would severely penalize the nonemployee-spouse and "come dangerously close to defeating the community interest" in the pension, and (3) no authority was cited to support imposition of such penalties. *Id.* at 482–83, 734 P.2d at 262–63. Furthermore, the *Mattox* Court assumed, without deciding, that such hypothetical early-retirement penalties would not be imposed even under a pay as it comes in method. *Id.* In the instant case, the undisputed evidence demonstrates that (1) at the time of valuation of Wife's interest in the Plan, Husband had actually retired and Husband had not suffered the same early-retirement penalties as those that were applied against Wife's share of the community interest; (2) the penalties levied against Wife were very substantial; and (3) Husband cites no legal authority to support the imposition of the hypothetical early-retirement penalties against his nonemployee-spouse. Accordingly, we assume that Husband found no legal authority to support this argument. *See In re Adoption of Doe*, 100 N.M. 764, 765, 676 P.2d 1329, 1330 (1984).

■ We agree with the reasoning followed in *Mattox* and apply it here in the context of a pay as it comes in distribution. *See Mattox*, 105 N.M. at 483, 734 P.2d at 263. Absent an express agreement by the parties to the contrary, the only retirement penalties to be imposed against the nonemployee-spouse's share of the pension being distributed pursuant to a pay as it comes in method are those penalties that were actually applied to calculate the employee-spouse's pension benefits.

■ Next, we address the trial court's calculation of Wife's interest in the Plan based on Husband's average salary at the time of divorce. Wife's argument regarding the trial court's use of Husband's salary at the time of divorce is not clearly set forth. Wife appears to present this issue as one of pension valuation only. However, in urging this Court to follow the reasoning used by the courts in *Fondi v. Fondi*, 106 Nev. 856, 802 P.2d 1264 (1990), and *In re Marriage of Bulicek*, 59 Wash.App. 630, 800 P.2d 394 (1990), Wife also appears to argue that postdivorce salary increases should be subsumed within her community interest share of the Plan and that the burden of showing that the salary increases are separate property should be placed on the employee-spouse. In *Fondi*, the court characterized the postdivorce advancements and pay raises as belonging to

the community interest in the pension because, as in the instant case, the early employment period of the employee-spouse occurred during the marriage, and such early periods often comprise " 'the building blocks to upward mobility and ... increased salary.' " *Fondi*, 802 P.2d at 1266 (quoting *Gemma v. Gemma*, 105 Nev. 458, 778 P.2d 429, 431 (1989)). The court in *Bulicek* made a similar determination because, as it appears in the instant case, the couple's lengthy marriage served as a foundation of community effort upon which the postdivorce advancements and pay raises were based. *Bulicek*, 800 P.2d at 399 (citing *In re Marriage of Adams*, 64 Cal. App.3d 181, 134 Cal.Rptr. 298 (1976)).

Husband contends that the trial court's use of his average salary figures at the time of divorce should be upheld because his postdivorce higher salaries and bonuses, which increased by approximately 51% between the time of divorce and actual retirement, are his separate property. Accordingly, Husband argues that the income adjustment is necessary to safeguard his interests and to prevent an invasion of his separate property. *See Koelsch v. Koelsch*, 148 Ariz. 176, 180–182, 713 P.2d 1234, 1238–40 (1986) (en banc); *Shill v. Shill*, 115 Idaho 115, 120, 765 P.2d 140, 145 (1988) (both cases evaluate salary increases in the context of valuation of retirement plan benefits for the purpose of determining the community interest and characterize the increases as the separate property of the employee-spouse).

Husband testified and presented evidence regarding the dramatic increase in his salary between the date of divorce and the date of retirement. He estimated that at the time of the divorce, he earned approximately $27,000 per year as a supervisor of a clerical section in Jal, New Mexico. Husband also testified that after the divorce, he was promoted to manager of branch operations in Midland, Texas, at a salary of $52,000. In contrast, Wife presented no evidence to support the contention that Husband's advancements and pay raises were due to community rather than separate effort.

The question of whether to apply Husband's salary at the time of retirement or the time of divorce involves the characterization of the salary component of the Plan as community or separate property rather than an issue of pension valuation. It is well settled that a pension is community property. *See LeClert v. LeClert*, 80 N.M. 235, 236, 453 P.2d 755, 756 (1969), *overruled on other grounds by Espinda v. Espinda*, 96 N.M. 712, 713–14, 634 P.2d 1264, 1265–66 (1981). There is also no dispute between the parties that their divorce decree acknowledges that the Plan is community property. Nor do the parties seem to contest the following community property principles, which are well settled in New Mexico: (1) property takes its status as community or separate at the time and by the manner of its acquisition, *Bustos v. Bustos*, 100 N.M. 556, 557, 673 P.2d 1289, 1290 (1983); and (2) property acquired by either spouse before marriage or after entry of a decree of dissolution of marriage is separate property, NMSA 1978, § 40–3–8(A)(1) (Cum.Supp.1992).

What is in question is which part of the Plan is due to community effort and which part of the Plan is attributable to Husband as his sole and separate property. This precise issue is a case of first impression in New Mexico and was not directly raised in either *Mattox*, 105 N.M. at 482, 734 P.2d at 262 (substantial evidence requirement was met when the trial court's valuation of the pension fell within the range of figures offered by the parties' experts and both experts testified that their calculations of the present value of the pension did not take into consideration husband's earnings between the date of trial and date of maturity of the pension), or *Madrid v. Madrid*, 101 N.M. 504, 505, 684 P.2d 1169, 1170 (Ct.App.1984) (when pension is given a discounted value for the purpose of division, it should be calculated as of the time of divorce).

We need not decide this question of first impression in this case. We believe that the most that Wife would be entitled to under *Fondi* and *Bulicek*, on which she relies, would be a requirement that Hus-

band, as the employee-spouse, would bear the burden of proving that any postdivorce increases in salary are due to his singular separate efforts. *See Hare v. Hodgins,* 586 So.2d 118, 127–29 (La.1991). Even if we adopted this view of the law advocated by Wife, which we expressly do not do, Wife would still lose on the issue of which average salary figures to use as part of the formula.

Husband presented the only evidence on this issue—that his postdivorce salary increases were due to the separate efforts of relocating to a new state and undertaking significantly new and different job duties and responsibilities. Accordingly, we hold that in the instant case, the trial court did not err in refusing to include Husband's postdivorce salary increases in the calculation of Wife's share of the community interest in the Plan.

### SEVERANCE PAY

Wife contends that the trial court erred in classifying the $62,864.16 lump sum severance payment as Husband's separate property. Although Husband acquired the payment after the divorce, Wife contends that a portion of the payment should be characterized as community property. Wife does not clarify the basis for her argument. Apparently, Wife is asserting that this payment induced Husband to retire early and that the decision to retire early reduced the retirement pension benefits both parties would receive. Wife may also be arguing that the lump sum was compensation for the reduced pension. Wife cites no cases that support her position. In fact, Wife concedes that the three cases she does rely on, *Whorrall v. Whorrall,* 691 S.W.2d 32 (Tex.Ct.App.1985); *LaBuda v. LaBuda,* 349 Pa.Super. 524, 503 A.2d 971 (1986), *appeal denied,* 514 Pa. 648, 524 A.2d 494 (1987); and *Boger v. Boger,* 103 N.C.App. 340, 405 S.E.2d 591 (1991), come to the opposite conclusion of the one that Wife urges upon us here. Wife's attempt to distinguish these cases is not persuasive. The only basis on which Wife attempts to distinguish *Whorrall, LaBuda,* and *Boger* from the instant case is that the pension benefits in the instant case

were reduced because of early retirement and were not reduced in the other three cases. Wife offers no elaboration on this distinction, and it is not apparent that the nonemployee-spouses in *Whorrall, LaBuda,* and *Boger* did not suffer a loss in benefits as well. Nor does Wife explain the relevance of this distinction, even if it is accurate. Furthermore, Wife also neglects to point out that there is generally some loss to the nonemployee-spouse in having the employee-spouse retire later rather than sooner, once the eligibility date has been reached, simply because fewer periodic payments are thus received by the nonemployee-spouse and there is an increased risk that the employee-spouse will die before the nonemployee-spouse has received any benefits. *See Schweitzer,* 103 N.M. at 615, 711 P.2d at 892.

Husband contends that the lump sum was severance rather than retirement payment. Husband's expert presented extensive testimony to support the classification of the lump sum payment as severance pay. In addition, Husband testified that (1) his job was eliminated due to the reorganization of the company and there was no guarantee that the new purchaser of the company would find Husband another job; (2) the only substitute job the company proposed to Husband was in Washington and Husband, not wishing to sell his home, did not consider that to be an attractive offer; and (3) Husband's early retirement was not a voluntary decision. Regarding the relationship between the severance pay and the pension benefits, Husband testified that the severance pay did not change his level of pension benefits and that he made no contribution to the severance pay fund.

In relying on *Boger,* Wife appears to be raising the issue of whether this Court should adopt the analytic approach to classifying property in the context of severance pay. *See Boger,* 405 S.E.2d at 593. The analytic approach goes beyond the absolute rules of division and looks to the purpose of the source of revenue. *See id.; In re Marriage of Lawson,* 208 Cal.App.3d 446, 256 Cal.Rptr. 283, 286 (1989); *see also Soto v. Vandeventer,* 56 N.M. 483, 494, 245

P.2d 826, 832–33 (1952) (applying the analytic approach to the division of tort compensation, classifying pain and suffering as separate property as compared to community losses such as medical expenses). We need not decide whether to adopt the analytic approach in the context of severance pay because Wife presented no evidence to support her contention that the payment was retirement pay rather than severance pay or that the payment was in any way intended as compensation for past service. In addition, Wife failed to comply with SCRA 1986, 12–213(A)(2) (Repl.1992), by neglecting to include any of the evidence relevant to this issue, on which Husband relied in his answer brief. *See Martinez v. Southwest Landfills, Inc.,* 115 N.M. 181, 185–86, 848 P.2d 1108, 1112–13 (Ct.App. 1993). Therefore, we do not find Wife's argument persuasive.

Husband presented sufficient evidence for the trial court to find that the lump sum payment was separate property because it was pay he received after the divorce, it compensated him for future earnings, and it was not additional retirement pay involving the community interest. Accordingly, we affirm the trial court's determination that the $62,864.16 lump sum payment is Husband's sole and separate property to which Wife has no claim.

*CONCLUSION*

The judgment of the trial court is affirmed in part and reversed in part. The trial court erred in applying hypothetical early-retirement penalties, which were not applied to Husband, to Wife. However, under the circumstances of this case, we cannot say that the trial court erred in using the amount of Husband's average compensation as of the date of divorce in calculating Wife's share of the pension. On remand, the calculation of Wife's portion of the pension prior to the Social Security adjustment should be as follows:

$$1.83\% \times \$2689.47 \times 23.9167 \times 96.7\% \times 50\% = \$569.14.$$

After the retirement benefit is adjusted for Social Security benefits, Wife's portion would be $405.19.

The judgment regarding the severance pay is affirmed. This case is remanded for the purpose of entering a new judgment consistent with our holding that Wife's share of the monthly retirement benefits is $569.14 before and $405.19 after the Social Security adjustment and our holding recalculating Wife's entitlement to past due benefits in accordance with these figures. Wife is awarded $1500 in attorney fees on appeal and is also awarded her appellate costs.

IT IS SO ORDERED.

DONNELLY, and BLACK, JJ., concur.