This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**SHELLEY TRINOSKY,**

Petitioner-Appellant,

v.                                                                    **No.    31,594**

**PETER JOHNSTONE as Personal Representative of the Estate of DONALD L. TRINOSKY, deceased,**

Respondent-Appellee.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Elizabeth E. Whitefield, District Judge**

Paul Kennedy & Associates
Paul J. Kennedy
Arne R. Leonard
Albuquerque, NM

for Appellant

Peter H. Johnstone, P.C.
Peter H. Johnstone
Albuquerque, NM

for Appellee

**MEMORANDUM OPINION**

**BUSTAMANTE, Judge.**

**{1}** Shelley Trinosky (Wife) and Donald L. Trinosky (Husband) were married in 1975. Wife initiated legal separation proceedings in 2002. Approximately eight months later, Husband died. The district court denied Wife's motion to dismiss and proceeded to divide the parties' property pursuant to statute. A judgment and decree of legal separation was issued in 2006. Wife appealed and we affirm.

**FACTUAL BACKGROUND**

**{2}** Wife and Husband were married in 1975. Husband, who was approximately thirty years older than Wife, practiced medicine throughout the marriage. Wife taught school until 1982, when the parties' son was born; by mutual agreement, Wife then withdrew from the workforce to care for their son. She never returned to the workforce.

**{3}** Wife filed a petition for legal separation in July 2002. Husband answered the petition with his own "request[] . . . to enter a final decree of legal separation and equitabl[e] divi[sion of] the parties' community property and debt." Husband died on April 3, 2003, approximately eight months later. The district court ruled that the "case would proceed forward pursuant to [NMSA 1978,] Section 40-4-20(B)[(1993),]" which provides that "if a party to the action dies during the pendency of the action, but

prior to the entry of a decree granting dissolution of marriage [or] separation, . . . [t]he court shall conclude the proceedings as if both parties had survived." After entering findings of fact and conclusions of law, the district court issued a judgment and decree of legal separation in 2006. Additional facts are provided as necessary to our analysis.

**Procedural Posture**

{4} This is the second time this Court has considered this case. *See Trinosky v. Johnstone*, 2011-NMCA-045, 149 N.M. 605, 252 P.3d 829. After the district court divided the property and entered a decree of legal separation in 2006, Wife appealed. Wife argued that the district court erred in denying her motion to dismiss under Rule 1-041(A)(2) NMRA and maintained that the district court made a number of other errors. *Trinosky*, 2011-NMCA-045, ¶ 1. The district court had denied Wife's motion to dismiss on the ground that Section 40-4-20(B) required continuation of the case. *Trinosky*, 2011-NMCA-045, ¶ 8. This Court concluded that the statement in Section 40-4-20(B) that "[t]he court *shall* conclude the proceedings as if both parties had survived" (emphasis added) does not preclude voluntary dismissal of a petition under Rule 1-041(A)(2). *Trinosky*, 2011-NMCA-045, ¶ 19. Rather, voluntary dismissal is simply one way that the proceedings might be concluded. *Id.* ¶ 18. The case was remanded for consideration of the factors for voluntary dismissal found in *Brown v.*

*Baeke*, 413 F.3d 1121, 1123 (10th Cir. 2005) and *Ohlander v. Larson*, 114 F.3d 1531, 1537 (10th Cir. 1997). *Trinosky*, 2011-NMCA-045, ¶ 27. The Court did not reach Wife's other issues. *Id.* ¶ 1. On remand, a different district court judge heard argument in 2011 on the factors, concluded that Husband would be prejudiced by dismissal of the petition, and denied Wife's motion.

{5} Wife now appeals both the findings and conclusions in the 2006 proceedings and the denial of the motion to dismiss in 2011.

**DISCUSSION**

{6} For ease of reference, we denominate the separation proceedings in 2006 as the "first proceeding" and the review of the motion to dismiss on remand as the "second proceeding." Wife makes a number of assertions of error in the first proceeding. In addition, she argues that the district court in the second proceeding erred by denying her motion to dismiss. Since analysis of the latter assertions might preclude analysis of the former, we address the proceedings in reverse order.

**Second Proceeding**

{7} "We review the district court's denial of Wife's motion to dismiss for an abuse of discretion. An abuse of discretion will be found when the [district] court's decision is clearly untenable or contrary to logic and reason." *Id.* ¶ 23 (alteration in original) (internal quotation marks and citations omitted).

4

**{8}** Wife first argues that the district court erred in concluding that Husband would be prejudiced by dismissal. Although she appears to accept that the district court considered the correct factors, she maintains that assessment of the factors reveals no prejudice. The factors are: "[T]he opposing party's effort and expense in preparing for trial; excessive delay and lack of diligence on the part of the movant; insufficient explanation of the need for a dismissal; and the present stage of the litigation." *Id.* ¶ 25 (internal quotation marks and citation omitted). "Each factor need not be resolved in favor of the moving party for dismissal to be appropriate, nor need each factor be resolved in favor of the opposing party for denial of the motion to be proper." *Ohlander*, 114 F.3d at 1537. In addition, the district court was to review "considerations unique to the circumstances of each case" and "the equities facing both parties." *Trinosky*, 2011-NMCA-045, ¶ 25-26 (internal quotation marks and citation omitted). Finally, the district court must consider the dismissal in light of case law related to estates of decedents who die while a dissolution or separation action is pending. *Id.*; *see Oldham v. Oldham*, 2011-NMSC-007, 149 N.M. 215, 247 P.3d 736.

**{9}** The district court apparently agreed with Wife that the first and third factors supported dismissal. Nevertheless, the district court found that Wife's delay was excessive based on the nearly fifteen months that elapsed between the death of Husband and Wife's motion to dismiss and the pursuit of the case through motions by

5

both parties, hearings, and discovery during those months. In addition, it noted that just before the petition was filed, Husband had executed a will and trust in July 2002. It found that Husband's response to the petition indicated that "he affirmatively wanted his separate property ratified, his separate debts ratified, his portion of community property and debts awarded to him and an award of his . . . attorney[] fees and costs." (Emphasis omitted). It found that Husband's "own claim for relief" was a "consideration[] unique to the circumstances of this case" and that "it would be prejudicial to Husband to not have his estate divided pursuant to his request for relief and distributed according to his new estate plan."

{10}    After a careful review of the record, we discern no abuse of discretion in denial of the motion to dismiss. The district court's finding of excessive delay is supported by both the length of time before the motion was filed and Wife's conduct during that period. More importantly, the district court's finding that Husband's interest in having his estate divided according to his claim for relief is consistent with *Oldham*, in which the Court held, "If a party to a pending divorce dies with a valid will, the domestic relations proceeding must first determine the property over which the decedent can exercise the power of testamentary disposition." 2011-NMSC-007, ¶ 34.

**{11}** Wife next argues that the district court's denial of the motion to dismiss was erroneously based on evidence adduced after the motion was filed and that on remand the district court was limited to considering only that evidence that was available when the motion was filed. We do not address this issue because the findings discussed above, which do not include the contested findings, are sufficient to support the denial of the motion. In addition, the district court specifically found that "Husband would suffer prejudice by the dismissal of the lawsuit even if the [c]ourt considered the facts as they existed on September 23, 2004." We affirm the denial of the motion to dismiss.

**First Proceeding**

**{12}** Wife argues that in the first proceeding the district court erred when it (i) found insufficient evidence that community property was transmuted to joint tenancy, (ii) ruled that social security benefits of more than $219,000 transmuted into community property, (iii) misread an exhibit and erroneously attributed $43,000 in cash to Wife, (iv) failed to deny the petition on the ground that the parties did not intend to separate permanently, and (v) determined spousal support. She also argues that Section 40-4-20(B) is unconstitutional. Since the first two issues pertain to transmutation of property, we address them together first.

7

**Transmutation**

{13} "Property acquired during marriage by either husband or wife is presumed to be community property." *Hodges v. Hodges*, 1984-NMSC-031, ¶ 6, 101 N.M. 67, 678 P.2d 695; *see* NMSA 1978, § 40-3-12(A) (1973); *Franklin v. Franklin*, 1993-NMCA-077, ¶ 22, 116 N.M. 11, 859 P.2d 479 ("[P]roperty takes its status as community or separate at the time and by the manner of its acquisition."). "The party asserting that property acquired during marriage is separate bears the burden of presenting evidence that would rebut the presumption by a preponderance of the evidence." *Hodges*, 1984-NMSC-031, ¶ 6. "The determination of its legal status as separate or community property is merely the initial inquiry, however, because the spouses are permitted to change the property's status." *Nichols v. Nichols*, 1982-NMSC-071, ¶ 22, 98 N.M. 322, 648 P.2d 780. The intent of the parties is central to transmutation. *Swink v. Fingado*, 1993-NMSC-013, ¶ 64, 115 N.M. 275, 850 P.2d 978.

> It is well settled that when a spouse merely places his or her separate property into joint tenancy with the other spouse, without an intention to make a gift or otherwise transmute the separate property into a true joint tenancy in which each spouse has an undivided one-half interest, the property retains its character as separate property. By the same token, property which *is* community property—because it has been acquired during marriage and is attributable, for example, to the earnings of one or both spouses—retains its character as such and is not "converted" from the community property of both spouses into the separate property of either or both, absent persuasive evidence that the parties intended to transmute their community property into separate property.

8

*Id.* (footnote omitted) (citations omitted). The party asserting transmutation of property bears the burden of proof. *Macias v. Macias*, 1998-NMCA-170, ¶ 17, 126 N.M. 303, 968 P.2d 814.

{14} Wife first argues that the district court erred in finding that community property had not been transmuted into separate property held in joint tenancy. The district court concluded that "[t]he property held by the parties is community property. There is no clear, strong[,] and convincing evidence of any transmutation of the community property into the common law estate of joint tenancy." On review, we examine whether the district court erred in determining that the evidence of transmutation was not clear and convincing. *See Chavez v. Chavez*, 1952-NMSC-050, ¶ 11, 56 N.M. 393, 244 P.2d 781 (transmutation must be shown by clear and convincing evidence); *Nichols*, 1982-NMSC-071, ¶ 22 ("It is for the . . . [district] court[] to determine whether the proof requirement has been met; the appellate court reviews the evidence in the light most favorable to the prevailing party and determines whether the fact finder could properly have determined whether the proof requirement had been met." (internal quotation marks and citation omitted)).

{15} Here, the district court found that "[t]here was no evidence presented in this present matter that . . . the parties' property was held in joint tenancy. The [c]ourt does not know how the parties' property was held" and that "[t]here was no evidence

9

presented in this present matter that any community property was transmuted into joint tenancy." It concluded that Wife had failed to overcome the presumption that all property acquired during the marriage is community property. Wife argues that these findings were error because the evidence presented at trial, which consisted largely of her own testimony, indicated that "all assets of the parties, including the marital residence, were held in joint tenancy." She testified that Husband intended assets to pass to Wife should she survive him and points to the fact that she "filed a death certificate with the county clerk in order to effectuate the transfer of the residence into her name alone[,]" stating this conduct "was consistent with ownership of the residence in joint tenancy." Finally, she maintains that Husband's revocable trust agreement, which stated that "any assets that have been titled in their names as joint tenants are intended to pass to her if she survives him[,]" is an indication of Husband's intent for all assets to be separate property held jointly. We note that no documentation—deeds, etc.—of joint tenant ownership of assets was presented.

**{16}** We interpret the district court's statement that there was "no evidence" presented as to the ownership of the parties' property to reflect the lack of documentary evidence and that the district court did not believe Wife's testimony that all assets were held in joint tenancy. *See Lopez v. Adams*, 1993-NMCA-150, ¶ 2, 116 N.M. 757, 867 P.2d 427 ("It is for the [district] court to weigh the testimony [and]

10

determine the credibility of witnesses . . . . If a finding is made against the party with the burden of proof, we can affirm if it was rational for the [district] court to disbelieve the evidence offered by that party." (citation omitted)).

{17}     In any case, we affirm the district court's findings related to transmutation for several reasons. First, the fact that property is held in joint tenancy does not automatically mean that the property is not community property. *Macias*, 1998-NMCA-170, ¶ 13; *Swink*, 1993-NMSC-013, ¶ 64; NMSA 1978, § 40-3-8(B) (1990) ("Property acquired by a husband and wife by an instrument in writing . . . as joint tenants or otherwise shall be presumed to be held as community property unless such property is separate property within the meaning of Subsection A of this section.). Second, we agree with the district court that the language of the revocable trust agreement is not clear and convincing evidence of Husband's intent to transmute property into separate property held in joint tenancy because the language to which Wife directs our attention does not, on its face, indicate Husband's intent to transmute all community property into separate property. Rather, the statement refers only to "any assets *that have been titled in their names as joint tenants*." (Emphasis added.) Thus, this provision appears to apply only to property so titled. In the absence of evidence other than Wife's testimony that the parties' assets had been so titled, the applicability of this statement is limited.

11

{18}     Viewing the evidence in the light most favorable to the district court's findings and conclusions, we conclude that the evidence is not clear and convincing that the parties intended to transmute their community property into separate property held in joint tenancy. The district court did not err in this regard.

{19}     Wife next argues that "[t]he [district] court erroneously ruled that social security benefits received by Wife from 1986 to 2000 in the amount of $219,438[] constituted community property." Specifically, she disputes finding of fact number 28, which states, "The social security payments received by the parties were community property and are included in the investments set out above." Generally, "[s]ocial security benefits are considered separate property." *English v. English*, 1994-NMCA-090, ¶ 20, 118 N.M. 170, 879 P.2d 802. To the extent that finding of fact number 28 does not acknowledge that social security benefits are generally separate property absent transmutation, it may be incorrect.[1] Nonetheless, the district

---

[1]We note that *English* addressed the extent to which social security benefits could be used to "offset" one party's right to community property retirement benefits. 1994-NMCA-090, ¶ 20. *English*'s holding that a party's social security benefits are separate property and have no impact on the division of community property may not apply directly here, as here the benefits in question were for the parties' son, not either party. The parties do not address whether the benefits of a minor child as a result of one party's eligibility for social security benefits are the separate property of the eligible parent, the parent to whom the benefits are paid on the child's behalf, or the minor child. We need not address that issue because, even if we assume that the benefits were Wife's separate property, we perceive no error in the district court's conclusion that they were transmuted into community property.

court did not err in its analysis of the benefits. Citing *English*, the district court concluded that "[t]he [s]ocial [s]ecurity benefits received by Wife for the parties' minor child are community property assets because the benefits were provided for the use and benefit of the minor child but were co[m]mingled with community funds." This conclusion was based on the finding that "[b]y agreement of the parties, Wife invested the amounts received from the derivative social security [benefits] into community investment accounts." Thus, the district court implicitly acknowledged that the nature of the benefits was changed from separate to community property. Our inquiry, therefore, is whether the district court erred in determining that there was clear and convincing evidence that the benefits were transmuted into community property because they were commingled with the community funds in investment accounts.

{20}   "Even in the absence of an agreement, separate property can be transmuted into community property if it is commingled with community property in such a manner that it is impossible to trace or to segregate." 37 Am. Jur. 2d Proof of Facts 379 § 8 (1984); *see Burlingham v. Burlingham*, 1963-NMSC-068, ¶ 20, 72 N.M. 433, 384 P.2d 699. Similarly, "when the separate property cannot be traced, the evidence of the separate status is insufficient to overcome the presumption of community property and

transmutation is deemed by operation of law to have been proven by clear and convincing evidence." *Nichols*, 1982-NMSC-071, ¶ 26.

**{21}** The funds at issue were benefits for Husband's child to which he was entitled after Husband became eligible for social security benefits. *See* 42 U.S.C. § 402 (2012). Wife deposited the monies in investment accounts as discussed and agreed to with Husband. Husband had access to most of the investment accounts as well. The district court found that the investment accounts were community property. Wife does not contest this finding.

**{22}** The district court did not make a specific finding that the social security benefits were not traceable. But since Wife neither argues that the funds are traceable nor directs us to evidence of traceability, we presume the district court's conclusion that the social security benefits were transmuted into community property through commingling was correct. *Reeves v. Wimberly*, 1988-NMCA-038, ¶ 21, 107 N.M. 231, 755 P.2d 75 ("Upon a doubtful or deficient record, every presumption is indulged in favor of the correctness and regularity of the [district] court's decision, and the appellate court will indulge in reasonable presumptions in support of the order entered.").

**Attribution of Cash**

{23} The district court found that "[i]n December 2003 Wife had $43,000[] in cash." It also found that Wife expended much of this community property cash but "made no accounting for the $37,000[] in cash that she expended." On appeal, Wife argues that the district court erred in attributing these funds to the community and "thus caus[ed an] error in the division of property." Husband acknowledges that the document on which the district court relied indicated that the cash was in the possession of Husband's son "but nowhere does [the document] state that the cash was [the property of Husband's son]." Indeed, "[i]f the cash listed [on the document] was [Husband]'s son's own property, it would have had no bearing on the proceeding and would not have been included in the list of community property assets[.]"

{24} Examination of the record reveals that while the cash in question was labeled "Cash in [Husband's son's] possession[,]" it was listed on the first page of Husband's Exhibit D, which was titled "Preliminary Estimate of Community Property Assets." We agree with Husband that even if the cash was in possession of another person, the fact that it was listed on an exhibit purporting to be a list of community assets lends credence to the district court's determination that the funds were community property. More importantly, however, we decline to review this issue because Wife failed to preserve it for review. *Woolwine v. Furr's, Inc.*, 1987-NMCA-133, ¶ 20, 106 N.M. 492, 745 P.2d 717. When the exhibit was introduced, Wife stipulated pending

15

verification that the list of community assets was drawn from Wife's answers to interrogatories. Wife thereafter failed to make any further reference to the exhibit and made no objection to Exhibit D when the district court reviewed the admission of exhibits at the end of trial. Wife did not request a finding of fact relevant to the cash. Thus, Wife in essence agreed to both admission of the exhibit and the district court's reliance on it.

**Permanent Separation**

{25}     Wife filed the petition for legal separation under NMSA 1978, Section 40-4-3 (1973), which provides, "Whenever the husband and wife have permanently separated and no longer live or cohabit together as husband and wife, either may institute proceedings in the district court for a division of property, . . . without asking for or obtaining in the proceedings, a dissolution of marriage." On appeal, Wife maintains that the petition should have been denied because neither she nor Husband intended to separate permanently. *See Ex parte Sedillo*, 1929-NMSC-038, ¶ 7, 34 N.M. 98, 278 P. 202 ("The proposition that a permanent separation is an essential fact is not questioned."). In essence, Wife's argument is that the district court's finding that the parties had permanently separated was not supported by substantial evidence. *Cf. State v. Brecheisen*, 1984-NMCA-011, ¶ 21, 101 N.M. 38, 677 P.2d 1074 (reviewing the district court's determination that a married couple was "living apart" for

16

substantial evidence). "[W]hen considering a claim of insufficiency of the evidence, the appellate court resolves all disputes of facts . . . and indulges all reasonable inferences in support of the prevailing party." *Las Cruces Prof'l Fire Fighters v. City of Las Cruces*, 1997-NMCA-044, ¶ 12, 123 N.M. 329, 940 P.2d 177.

**{26}** Here, the district court found that "[t]he parties actually physically separated in 1998" and "[t]he parties had permanently separated at the time of Husband's death." Per NMSA 1978, Section 40-4-6 (1973), the petition for legal separation was accompanied by a verification in which Wife stated under oath that the assertions in the petition were true. In the petition, Wife stated that "[t]he parties [are] permanently separated and no longer live together as husband and wife." In his answer, Husband admitted this fact. Although Wife testified that neither she nor Husband ever intended to separate permanently, the district court was permitted to consider assertions in the verified petition as evidence of Wife's intent. *See Mathieson v. Hubler*, 1978-NMCA-119, ¶ 17, 92 N.M. 381, 588 P.2d 1056 ("[T]he fact that [the husband] had, under oath, asserted a non-marital relationship with [the wife] following the divorce was evidence relevant to [the husband's] assertion that he was a spouse."). In addition, Wife testified at trial that she and Husband had been separated since 1998, four years before the petition was filed. While she testified that she offered to let Husband live

17

in the marital residence while he was recuperating from surgery in 2003 and that they did things together, she also stated that until that point they were living separately.

**{27}** Wife also argues that, even if the parties had been separated before the filing of the petition, their separation cannot have been permanent because they reconciled between the filing of the petition and Husband's death and, therefore, the petition should have been denied. The district court found that "there is no credible evidence or testimony that Wife and Husband were reconciling at the time of or before Husband's death." The district court's determination is supported by evidence that Wife did not file a motion to dismiss until fifteen months after Husband's death and continued to file motions and expound discovery even after Husband's death. In addition, assuming that the assertions made under oath in the petition are true, Wife bore the burden to demonstrate that she and Husband had reconciled. The district court obviously did not believe her testimony and, therefore, Wife failed to meet this burden. *See Lopez*, 1993-NMCA-150, ¶ 2. We conclude the district court's determination that the parties were permanently separated and not reconciled was supported by substantial evidence.

**Spousal Support**

**{28}** Wife further argues that the district court ignored evidence of Wife's "greatly diminished future earning capacity." In fact, it is clear from the findings of fact that

18

the district court did consider Wife's ability to gain employment. The district court acknowledged Wife's testimony of "physical ailments that prevent her from seeking employment[,]" and that "Wife has not worked outside of the home in over twenty years." It also found that "[Wife's] testimony [that her ailments prevent her from working] is not credible" and that "Wife works out regularly and plays golf regularly." Finally, it acknowledged that Wife "is not able to teach at this time[,]" but found that "[i]t is reasonable to impute some income to Wife." It imputed income based on $7.50 per hour, forty hours per week. Contrary to Wife's assertion, these findings and the imputation of income near minimum wage reflect that the district court considered Wife's claims and based its spousal support award on assessment of that evidence. *See Weaver v. Weaver*, 1983-NMSC-063, ¶ 5, 100 N.M. 165, 667 P.2d 970 ("[A]limony is within the [district] court's sound discretion, and its determination will be altered only upon a showing of abuse thereof.").

{29} Wife also argues that "in view of [Husband's] death . . . the [district] court exceeded its discretion in considering [Husband's] future need for support." We understand this argument as a challenge to the district court's finding that Husband's ability to pay spousal support "would have been limited had he survived." Given that Section 40-4-20(B) directs the district court to proceed with the separation "as if both parties had survived," and that Husband was eighty-six years old when he died, we see

19

no abuse of discretion in this finding. Finally, we discern no error in the district court's reduction of Wife's budget from $6000 per month to $3500 per month. NMSA 1978, Section 40-4-7(E)(4)(a) (1997) directs the district court to consider "the reasonable needs of the respective spouses" in setting spousal support. Although the district court is required to also consider "the standard of living of the respective spouses during the term of the marriage[,]" it was within the district court's discretion to reduce Wife's proposed budget if it found, as it did, that it was "neither credible nor realistic."

**Constitutionality of Section 40-4-20(B)**

{30}    In her final argument, Wife argues that Section 40-4-20(B) is unconstitutional. Citing the New Mexico Constitution Article II, Sections 4, 18, 19, and 23, she argues that "New Mexico does not allow property to be taken away without due process" and that "allowing a deceased individual to claim rights to an estate violates due process since it deprives the living of property." She does not specify how Section 40-4-20(B) deprives her of due process when her rights under that provision are the same as if Husband had not died, nor does she explain how the statute violates Article II, Section 19's provisions regarding impairment of contracts. "[T]he party attacking the constitutionality of the statute has the burden of proving the statute is unconstitutional beyond all reasonable doubt." *State v. Druktenis*, 2004-NMCA-032, ¶ 15, 135 N.M.

20

223, 86 P.3d 1050. Wife's generalized assertions of unfairness do not meet this burden. We decline to address this argument further. *Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 ("We will not review unclear arguments, or guess at what . . . arguments might be.").

**CONCLUSION**

{31}     We conclude that the district court did not abuse its discretion in its findings and conclusions. We therefore affirm the judgment and decree of legal separation.

{32}     **IT IS SO ORDERED.**

_____
**MICHAEL D. BUSTAMANTE, Judge**

**WE CONCUR:**

_____
**JAMES J. WECHSLER, Judge**

_____
**LINDA M. VANZI, Judge**