COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Fitzpatrick,* Judges Elder and Annunziata
Argued at Richmond, Virginia


MICHAEL L. LUCZKOVICH
                                            OPINION BY
v.     Record No. 2975-96-2    CHIEF JUDGE JOHANNA L. FITZPATRICK
                                         FEBRUARY 24, 1998
KATHERINE H. LUCZKOVICH

             FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
                      John F. Daffron, Jr., Judge

             Deanna D. Cook (Bremner & Janus, on briefs),
             for appellant.

             W. Christopher Currie for appellee.


     In this domestic appeal, Michael L. Luczkovich (husband)

contends the trial court erred in its equitable distribution

decision of November 8, 1996.  Husband argues that the court

erroneously:  (1) classified husband's severance pay as marital

property; (2) classified three mutual funds as marital property;

(3) classified husband's profit sharing retirement plan as

marital property; (4) failed to reduce the proceeds from the sale

of the marital residence by the amount of the equity line balance

on the residence; and (5) classified two accounts as marital

property.  Wife contends the court erroneously:  (1) failed to

value certain accounts as of the date of separation; (2) failed

to value one account at the date closest to the taking of

evidence; (3) valued wife's vehicle; and (4) failed to award wife

_____
     *On November 19, 1997, Judge Fitzpatrick succeeded Judge
Moon as chief judge.

attorney's fees and costs.  For the following reasons, we affirm
in part, reverse in part, and remand.

## I.  Background

The parties married on October 10, 1981.  Husband testified
that he and wife separated in April 1991, but that he did not
recall when he formed the intent for the separation to be
permanent.  He admitted that they continued to have sexual
relations throughout the summer of 1991, but that he decided the
marriage was irretrievably broken "the late summer of '91.  I
don't know exactly when."  Wife testified that she did not
recognize husband's intent to end the marriage until the fall of
1991.  She stated:  "The way I remember it, it was not ever
initially whether we were going to end the marriage.  It was
whether he was going to return to [the marital residence].  He
informed me in November of [1991] that he was not."

The January 5, 1995 final decree of divorce reserved issues
related to the equitable distribution of the parties' marital
property, debts, spousal support, and legal fees.  The parties
submitted evidence by deposition, and the attorneys presented
closing arguments on September 1, 1994.  On July 13, 1995, the
court indicated to the parties that it had made a preliminary
determination of the estate's value and that it should be divided
equally.  The court then deferred formal ruling pending the
resolution of certain issues regarding the division of the
tangible personal property.  As of September 1995, no ruling had

2

been made with regard to the marital estate.  On September 18, 1995, wife filed a motion to have the value of the various marital assets updated.  The court granted the motion.  However, husband failed to supply the requested information, and wife withdrew the motion.

The trial court issued its final letter opinion regarding equitable distribution and attorney's fees on July 31, 1996.  The court "valued the parties' assets as of September 1, 1994, the date of the evidentiary hearing."  The court ruled that, in accordance with Code § 20-107.3(E), an equal division of the marital estate was appropriate and each party would receive $307,557.31 as their equitable award.

> The court made the following specific findings:
> The Court also includes the Standard Drug profit sharing plan in the marital estate. . . .  The Court finds that the funds accumulated in this plan are marital property.
> . . . [T]he Court finds that [the three Vanguard mutual funds numbered 40, 73, and 21] were funded by transfers from accounts holding marital funds.  The Court notes that [husband] depleted over $70,000 in marital funds after the parties [sic] separation.  While [husband] contends that he used these funds to pay expenses of [wife], [husband] does not indicate any payee or produce any cancelled checks and he fails to establish by a preponderance of the evidence that the funds were spent in the manner he suggests.  Accordingly, the Court concludes that these funds were used to establish the three mutual fund accounts in question and includes the mutual funds in the marital estate.
>
> *    *    *    *    *    *    *
>
> . . . [T]he Court includes the entire

proceeds from the sale of the marital home, $51,391.00, in the marital estate.

Finally, after careful consideration, the Court finds that attorney's fees are not justified. The Court finds that these fees were rendered to protect each parties' [sic] interests and the parties must bear their own attorney's fees and costs.

A final equitable distribution order was entered on November 8, 1996.

## II.  Severance Pay

The proper classification of severance pay is an issue of first impression in Virginia. Husband contends the trial court erred in classifying his severance pay as marital property. He argues that his severance pay should be considered his separate property because he negotiated and received the severance package two years after the dissolution of the marital partnership, and the package was not compensation for services provided during the marriage. We agree.

Husband began working for Standard Drug Company on December 1, 1990. In late June or July 1993, two years after the parties separated, husband negotiated a severance agreement with Standard Drug.[1] His position was eliminated on October 11, 1993, as a

---

[1]The "Executive Severance Agreement" included the following provision:

In recognition of the Executive's substantial contribution to the Corporation, and to encourage the Executive to remain with the Corporation pending the sale of the Corporation's stock or assets, the Corporation would like to provide additional compensation to the Executive if substantially all the Corporation's stock or assets are sold. The Board of Directors has

result of the company's acquisition by CVS. Husband testified that the severance package included a lump sum distribution "in excess of $300,000 pre-tax" and "eight months worth of continuing salary plus benefits." Without making a specific finding, the trial court classified the lump sum distribution as marital property.[2]

On appeal, the trial court's award of equitable distribution will not be reversed "[u]nless it appears from the record that the [court] has abused [its] discretion, that [it] has not considered or has misapplied one of the statutory mandates, or that the evidence fails to support the findings of fact underlying [its] resolution of the conflict in the equities." McClanahan v. McClanahan, 19 Va. App. 399, 401, 451 S.E.2d 691, 692 (1994) (citation omitted). Property acquired after the last separation is presumed to be separate unless the party claiming otherwise proves that the property "was acquired while some vestige of the marital partnership continued or was acquired with marital assets." Dietz v. Dietz, 17 Va. App. 203, 211-12, 436 S.E.2d 463, 469 (1993). "Where partnership efforts have contributed nothing to the acquisition . . . of the property, no

_____

determined that the compensation to be provided under this Agreement is reasonable compensation for the services rendered and to be rendered by the Executive.

(Emphasis added).

[2]The classification of the continuing salary and benefits portion of the package is not contested on appeal.

5

basis exists for its being classified as a marital asset."  Id. at 211, 436 S.E.2d at 468.

Although the classification of severance pay is a question of first impression in Virginia, several sister states have addressed this issue.  Those decisions provide that the touchstone of the classification is whether the severance pay was intended to compensate the employee for efforts made during the marriage or to replace post-separation earnings.  See, e.g., Franklin v. Franklin, 859 P.2d 479 (N.M. Ct. App. 1993), cert. denied, 858 P.2d 1274 (N.M. 1993) (severance pay received after divorce as compensation for future earnings is separate property); Ressler v. Ressler, 644 A.2d 753 (Pa. Super. 1994) (severance pay is separate property).[3]

The nature of post-separation severance pay as replacement for post-separation wages supports a classification of separate property.

> Severance pay compensates the wage earner for the economic exigencies and detriments resulting from permanent separation from service without fault . . . [and] is intended primarily to alleviate the consequent need for economic readjustment and to compensate for certain losses attributable to dismissal.

In re Marriage of Bishop, 729 P.2d 647, 649 (Wash. App. 1986) (severance pay is separate property and distinguishable from

---

[3]But see Brotman v. Brotman, 528 So.2d 550 (Fla. Dist. Ct. App. 1988) (severance pay received after separation but before dissolution was acquired during the marriage and is marital property).

deferred compensation).  Accord In re Holmes, 841 P.2d 388 (Colo. Ct. App. 1992) (although based on length of service provided during the marriage, severance payment is conditional on termination and replaces expected loss of income, therefore it is separate property).  See also Ryan v. Ryan, 619 A.2d 692, 695 (N.J. Super. Ct. Ch. Div. 1992) (severance payment where amount was based on husband's past services to employer was compensation for past labor and therefore marital property.  However, "[i]f the payment [had been] intended to replace post-marital earnings, it [would be] separate property.").  Additionally, severance pay is "a mere expectancy"; it has no value until the termination of employment.  Bishop, 729 P.2d at 650.  Consequently, when termination does not occur during the marital partnership and the right to severance pay is not established during the marriage, severance pay is separate property.  See Biddlecom v. Biddlecom, 495 N.Y.S.2d 301 (N.Y. App. Div. 1985) (severance pay is husband's separate property because the right to receive the payout did not exist prior to the commencement of the divorce action).

As a replacement for lost future wages, which is contingent upon termination, a severance package is analogous to an early retirement incentive plan.  Several states have found that post-separation payments under such incentive plans are the employee's separate property.[4]  See McClure v. McClure, 647

---

[4]But see, e.g., In re Heupel, 936 P.2d 561 (Colo. 1997) (en banc) (voluntary separation incentive payments are retirement pay

7

N.E.2d 832, 841 (Ohio Ct. App. 1994), cert. denied, 645 N.E.2d 1260 (Ohio 1995) (despite being based on years of service, armed forces voluntary separation incentive payments are analogous to severance payments which "attempt to compensate . . . for future lost wages" and are therefore separate property); LaBuda v. LaBuda, 503 A.2d 971 (Pa. Super. 1986), cert. denied, 524 A.2d 494 (Pa. 1987) (early retirement incentives are not marital property where husband's right to receive the benefits did not accrue prior to the parties' separation; wife could not have expected to enjoy these payments since neither party knew husband would receive the payments until after they separated); Boger v. Boger, 405 S.E.2d 591 (N.C. App. 1991) (payment under early retirement incentive plan is separate property).

In the instant case, at the time of the separation husband had been employed with Standard Drug for only a few months. Neither party expected the sale of Standard Drug. Husband negotiated the severance agreement almost two years after the parties separated. Consequently, the severance package is presumed to be separate property. To overcome the presumption, wife bears the burden of showing the lump sum payment compensated husband for services rendered during the marriage. See Dietz, 17 Va. App. at 211-12, 436 S.E.2d at 469.

---

rather than severance pay and are marital property); Fisher v. Fisher, 462 S.E.2d 303 (S.C. Ct. App. 1995) (voluntary separation incentive payments are tantamount to retirement benefits and are marital property).

On its face, the executive severance agreement indicated that the package was in recognition of husband's "substantial contribution to the Corporation, and to encourage the Executive to remain with the Corporation pending the sale" and "for the services rendered and to be rendered." Wife argues that this language proves that the severance pay was intended as compensation for services rendered during the marriage. However, the agreement also stated that the Executive would receive the severance compensation "if substantially all the Corporation's stock or assets are sold." The entire severance package, including the lump sum payment, was contingent upon the occurrence of a condition: the sale of Standard Drug. This condition did not occur during the marriage, and, as a consequence, husband's right to the lump sum payment did not accrue before the separation. The purpose of the severance agreement was related to the sale of the corporation, not to husband's work during his marriage. Consequently, we hold that wife failed to meet her burden, and the trial court erred in classifying the lump sum payment as marital property.

### III. Vanguard Mutual Funds

Between July 18 and December 11, 1991, husband opened Vanguard Mutual Funds 21, 40 and 73, titled in his name. Wife offered evidence that husband opened the accounts with money transferred from the parties' marital account. Husband testified that the funds were established after separation with his

9

post-separation earnings. On June 30, 1993, Fund #21 had a balance of $18,295.61, Fund #40 had a balance of $26,290.30, and Fund #73 had a balance of $13,025.35.

The trial court found the three accounts "were funded by transfers from accounts holding marital funds" and that after the separation, husband "depleted over $70,000 in marital funds." Although husband argued that he used this money to pay wife's expenses, the trial court found that he "fail[ed] to establish by a preponderance of the evidence that the funds were spent in the manner that he suggests." The trial court concluded "that these funds were used to establish the three mutual fund accounts in question," and it included the mutual funds in the marital estate. After the trial court's final letter opinion, husband provided his own summaries of the sources of the mutual fund money.

Husband argues the trial court abused its discretion by classifying the three mutual funds as marital property.[5] This argument lacks merit. Property acquired after separation is presumed to be separate property unless the party claiming otherwise demonstrates that it was obtained with marital funds. See Dietz, 17 Va. App. at 210, 436 S.E.2d at 468. "In determining whether credible evidence exists [to support the court's finding,] the appellate court does not retry the facts,

_____

[5]Although husband addressed the question of the $70,000 as a waste issue, this was not the approach of the trial court.

10

reweigh the preponderance of the evidence, or make its own determination of the credibility of witnesses." Moreno v. Moreno, 24 Va. App. 190, 195, 480 S.E.2d 792, 795 (1997) (citation omitted). In the instant case, wife offered credible evidence that the mutual funds were established with marital assets. The trial court did not abuse its discretion in finding the mutual funds to be marital property.

### IV. Profit Sharing Plan

Husband began working for Standard Drug on December 1, 1990, and began participation in the company profit sharing plan on July 1, 1991. The trial court classified the plan as a marital asset and valued it at $22,976.63, the balance as of December 31, 1993.

Husband argues that the parties separated before he became eligible to contribute to the plan and that Code § 20-107.3(G)(1) requires the profit sharing plan to be valued at the time of separation.[6] He claims the plan did not exist at the time of separation and concludes that the entire balance is his separate property.

Although the parties physically separated in April 1991 and husband asserts that he formed the intent to terminate the

---

[6]"The court may direct payment of a percentage of the marital share of [a profit-sharing plan] . . . which constitutes marital property . . . . 'Marital share' means that portion of the total interest, the right to which was earned during the marriage and before the last separation of the parties, if at such time or thereafter at least one of the parties intended that the separation be permanent." Code § 20-107.3(G)(1).

11

marriage in the late summer of 1991, he did not evince that intent until November 1991. Husband could not simply rest on his argument that the separation occurred before the profit sharing plan began. The trial court had discretion to conclude that the separation occurred after the profit sharing plan began, and once it did so, the burden shifted to husband to establish the amount of his post-separation contributions and how much of the plan was his separate property. "'All property including that portion of . . . [a profit-sharing plan] acquired by either spouse . . . before the last separation of the parties . . . is presumed to be marital property in the absence of satisfactory evidence that it is separate property.'" Frazer v. Frazer, 23 Va. App. 358, 370, 477 S.E.2d 290, 295 (1996) (quoting Code § 20-107.3(A)(2)). Husband failed to provide evidence establishing the portion of the plan that was his separate property, relying instead on his contention that the plan was entirely separate. It was within the trial court's discretion to reject this argument and classify the entire balance as marital when husband failed to provide evidence sufficient to determine how much of the plan was his separate property.

V. Equity Line on Marital Residence

During the marriage and prior to December 1993, the parties' marital home was encumbered by a mortgage and an equity line of credit. Shortly after they filed for divorce, the parties refinanced the mortgage and paid off the equity line. Without

12

consulting wife, husband borrowed against the equity line of credit. In June 1994 the new outstanding balance was approximately $44,000.[7] Husband asserted that he used $14,000 to pay "[t]he mortgage payment and all the utilities [sic] bills and so forth associated with [the marital residence]" for wife, and he used the balance "for investment purposes for which I owe the money back. She does not have any interest or obligation for that difference." When asked what he did with this money, husband answered that he "loaned it to [his] businesses." Husband provided no evidence of these loans.

On December 7, 1994, the parties received $26,270.14 in net proceeds from the sale of the marital residence. The equity line balance on the property was $25,121.41 at that time. According to husband's testimony, he spent $14,000 of the equity line funds on marital expenses for wife. The trial court disregarded the equity line balance, valued the property at $51,391, and included it in the marital estate.

Husband contends the trial court abused its discretion by failing to discount the value of the marital residence by the amount of the outstanding balance on the equity line of credit. As a general rule, "the use of [marital] funds for living expenses while the parties are separated does not constitute dissipation." Clements v. Clements, 10 Va. App. 580, 587, 397

_____

[7]During this period of time husband was being paid over $10,000 a month from his severance package and his net pay was approximately $6,000 per month.

S.E.2d 257, 261 (1990) (citations omitted). However, "the burden is on the party who last had the funds to establish by a preponderance of the evidence that the funds were used for living expenses or some other proper purpose." Id. at 587, 397 S.E.2d at 261. Husband had exclusive control of the equity line funds. He incurred the debt without authority from wife, and he offered insufficient proof of his use of these funds for marital expenses. Consequently, the trial court did not abuse its discretion by implicitly classifying the equity line debt as husband's separate responsibility and valuing the marital home without including the equity line.

VI. Vanguard IRA and Davenport Account

The balance of husband's Vanguard IRA at the parties' separation was $73,122.39. The balance as of October 1993 was $47,161.50. Husband testified that the value decreased due to the market decline and that he made no withdrawal or transfer of funds from this particular IRA. He also stated that the funds in this account came from "self-employment earnings" from 1988-1990. The trial court valued this asset as of the date of the evidentiary hearing at $118,529.80.

At the time of separation, the equity in the Davenport account was $8,534. The balance as of October 1993 was $42,394. Husband testified that the increase in this account came from the market increase. He stated that he "believed" he had deposited $20,000 since the parties' separation, but he could not

14

remember where this amount came from.  The trial court valued this asset as of the date of the evidentiary hearing at $50,444.50.

Husband argues the trial court erred in classifying these accounts as entirely marital, since he deposited money in them after the separation.  Property is presumed to be marital if it was "acquired by either spouse during the marriage, and before the last separation of the parties," unless evidence proves that the property is separate.  Code § 20-107.3(A)(2).  In the instant case, husband offered only his own testimony to establish that the deposits into these accounts were his separate property. "'The weight which should be given to evidence and whether the testimony of a witness is credible are questions which the trier of fact must decide.'"  Morse v. Commonwealth, 17 Va. App. 627, 631, 440 S.E.2d 145, 147-48 (1994) (quoting Bridgeman v. Commonwealth, 3 Va. App. 523, 528, 351 S.E.2d 598, 601 (1986)). Absent credible evidence establishing the separate nature of at least a portion of the funds, we cannot hold that the trial court erred in classifying these accounts as marital assets.

## VII.  Wife's Additional Issues

Wife contends the trial court erred in valuing her Ford Escort at $9,500 rather than $8,500, as indicated by the only evidence submitted on the issue.  The court provided no explanation for its deviation from the evidence, and the basis for the $9,500 value does not appear in the record.  Because the

15

trial court's value for wife's vehicle lacks evidentiary support and may be merely a typographical error, we remand for determination of the proper value.

Wife also argues that the trial court erred in failing to value Vanguard account #5195-1030 as of the date closest to the evidentiary hearing on September 1, 1994. Wife contends the proper value of the account is $84,089.40, the value in August 1994, while the court valued the account at $42,722.88, its value in 1993. In its letter opinion, the trial court indicated that the parties' assets were valued "as of September 1, 1994," and it valued the other assets as close to that date as possible. The court offered no explanation for its failure to use the August 1994 statement to value account #5195-1030. We hold that the trial court erred in treating this asset differently without explanation, and we remand for determination of the proper value.

Additionally, wife contends the trial court erred in valuing four of the parties' joint accounts as of the date of the evidentiary hearing rather than the date of separation. Wife claims the combined value of these accounts was $125,545.98 when the parties separated while the combined value at the time of the evidentiary hearing was $34.45. Wife concedes that the inclusion of mutual fund accounts 21, 40 and 73 recovered $60,036.91, but she argues the remaining $65,509.07 is unaccounted for.

Under Code § 20-107.3(A), at least twenty-one days before the evidentiary hearing, a party may submit a motion for an

16

alternate valuation date.  Wife failed to file a motion to value the property as of the date of separation.  While wife did file a motion to update values, she subsequently withdrew it.  Consequently, we cannot hold that the trial court abused its discretion in valuing the parties' assets as of September 1, 1994, the date of the evidentiary hearing.

Wife lastly argues the trial court erred in failing to award her attorney's fees and costs.  She contends the disparity in the parties' incomes and their relative resources requires reversal.  An award of attorney's fees lies within the sound discretion of the trial court.  <u>See</u> <u>Stumbo v. Stumbo</u>, 20 Va. App. 685, 460 S.E.2d 591 (1995).  In the instant case, the trial court gave "careful consideration" to the question of attorney's fees and found that an award of fees was not justified.  We cannot hold the court abused its discretion in declining to award attorney's fees and costs.  For the foregoing reasons, we affirm in part, reverse in part, and remand.

<u>Affirmed in part,</u>
<u>reversed in part,</u>
<u>and remanded.</u>

17