COURT OF APPEALS OF VIRGINIA


Present:   Judges Elder, Haley and Senior Judge Annunziata
Argued at Alexandria, Virginia


DAVID PAUL COTE

MEMORANDUM OPINION[*] BY
v.      Record No. 1008-06-4             JUDGE LARRY G. ELDER
                                            MARCH 13, 2007
SUSAN REDFIELD COTE


FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
Benjamin N. A. Kendrick, Judge

Lawrence D. Gaughan for appellant.

Griffin T. Garnett, III, for appellee.


David Paul Cote (husband) appeals from the spousal support and equitable distribution

awards entered by the Arlington County Circuit Court in conjunction with his divorce from

Susan Redfield Cote (wife).  On appeal, he contends the trial court erred in finding him

responsible for $100,000 in debt incurred prior to the parties' final separation and in awarding

him only forty percent of wife's substantial retirement account.  He also contends the trial court

erred in awarding wife spousal support and in failing to make written findings of fact identifying

the statutory factors supporting its decision.  We hold the trial court did not err, and we affirm.

I.

On appeal, we consider the evidence in the light most favorable to wife, the party who

prevailed in the trial court.  E.g. Wilson v. Wilson, 12 Va. App. 1251, 1254, 408 S.E.2d 576, 578

(1991).

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

## A. EQUITABLE DISTRIBUTION

"Fashioning an equitable distribution award lies within the sound discretion of the trial judge . . . ." Srinivasan v. Srinivasan, 10 Va. App. 728, 732, 396 S.E.2d 675, 678 (1990). Although the trial court must consider all factors set out in Code § 20-107.3(E), it "need not quantify or elaborate exactly what weight was given to each of the factors" as long as its "findings . . . [are] based upon credible evidence." Taylor v. Taylor, 5 Va. App. 436, 444, 364 S.E.2d 244, 249 (1988).

### 1. Classification of Marital Debt

The court specifically recited all of the statutory factors and stated that, "[t]o the extent that evidence has been presented, the Court has considered all of these factors in reaching [the equitable distribution] award." It specifically noted factor (10), "[t]he use and expenditure of marital property by either of the parties for a nonmarital separate purpose or dissipation of such funds when such was done in anticipation of divorce or separation or after the last separation of the parties." It noted that consideration of this factor "[c]learly [was] appropriate with respect to the [home] equity line of credit of $200,000" and held that "based on the factors and the evidence before this Court, . . . that amount should be credited as a debt to the husband." The evidence, viewed in the light most favorable to wife, supports the trial court's decision.

Husband admitted that when he and wife signed documents to borrow $275,000 against the marital residence in December 2002, he was thinking about leaving wife but did not tell her. Thereafter, without wife's knowledge, husband received the full $275,000, and the home equity line had a balance of $200,000 when husband told wife he no longer wished to be married. Husband admitted that $100,000 he received from the home equity line in July and October 2003 was his separate debt but contended the $100,000 balance that existed prior to that time was marital debt. Husband, as the party who acquired the funds at a time when he knew "'the

- 2 -

marriage [was] undergoing an irreconcilable breakdown,'" bore the burden "to establish by a preponderance of the evidence that the funds were used for living expenses or some other proper purpose." Clements v. Clements, 10 Va. App. 580, 586-87, 397 S.E.2d 257, 261 (1990) (quoting Hellwig v. Hellwig, 426 N.E.2d 1087 (Ill. App. Ct. 1981)).

Wife testified that, until the divorce proceedings were underway, she had no knowledge that husband had received funds from the home equity line on December 31, 2002. She also testified that, as of that date, the only thing they had discussed using the home equity line for was future remodeling of the marital residence, and it was undisputed that none of the $100,000 was spent for that purpose. When wife's attorney asked husband to provide an accounting of how the original $100,000 had been spent, husband testified, "Probably in the various records over the years; . . . -- our joint expenditures for the house; tuition; you know, whatever came up in the ensuing years; assumption of the old line of credit." Husband said the documents that would establish his claims that the money was spent for marital purposes were in the marital residence, but he conceded he had made no effort to obtain those documents from wife in discovery, and he did not offer any supporting documentation into evidence.[1]

Husband had exclusive use of the equity line funds, and despite an opportunity for discovery, he offered nothing to support his testimony that he used the funds at issue for marital expenses. Consequently, the trial court did not abuse its discretion by holding husband failed to prove by a preponderance of the evidence that $100,000 of the debt was marital property. See Luczkovich v. Luczkovich, 26 Va. App. 702, 714, 496 S.E.2d 157, 163 (1998).

---

[1] In a motion to reconsider, husband offered documents relating to what was apparently the parties' original home equity line and satisfaction of the balance of approximately $34,000 on same. The trial court denied the motion, and husband does not contest the denial of that motion in this appeal.

2. Division of Wife's Retirement Account

"Virginia law does not establish a presumption of equal distribution of marital assets." Matthews v. Matthews, 26 Va. App. 638, 645, 496 S.E.2d 126, 129 (1998); see Robbins v. Robbins, 48 Va. App. 466, 480, 632 S.E.2d 615, 622 (2006) (affirming circuit court's use of "a 65/35 division of assets"). Further, "[e]ach marital asset is not necessarily entitled to be treated the same for purposes of equitable distribution." Gamer v. Gamer, 16 Va. App. 335, 344, 429 S.E.2d 618, 624 (1993). How to divide the marital share of wife's retirement account, "as with any other asset, rested within the sound discretion of the chancellor, subject to the limitations of Code § 20-107.3(G) and upon consideration of the Code § 20-107.3(E) factors." Torian v. Torian, 38 Va. App. 167, 181, 562 S.E.2d 355, 362 (2002). "[F]actors and circumstances leading to the dissolution of the marriage *may* be considered during equitable distribution -- even if those factors have no financial impact on the marriage -- as long as those factors detracted from the overall 'marital partnership.'" Ranney v. Ranney, 45 Va. App. 17, 46-47, 608 S.E.2d 485, 499 (2005) (quoting O'Loughlin v. O'Loughlin, 20 Va. App. 522, 528, 458 S.E.2d 323, 326 (1995)).

The evidence, viewed in the light most favorable to wife, supported the trial court's award to wife of sixty percent of her retirement account of $247,819.75. The evidence supported a finding that, although husband may have made more significant monetary contributions over the course of the marriage, wife worked full-time during most of the marriage and made substantial monetary contributions, as well. The evidence also supported a finding that wife's nonmonetary contributions were more significant than husband's. In addition to maintaining employment outside the home, wife was the primary caretaker for the couple's children and home throughout the marriage. Although wife and husband were both 53 at the time of the equitable distribution proceeding, the evidence established that wife suffered from chronic manic depression and that her condition was exacerbated by husband's "odd relationship" with a female

- 4 -

co-worker; his subsequent desertion of wife without warning; and his failure to be honest with wife about his intent that the separation would be permanent. It also established that after husband left the marital residence, wife, whom husband had agreed could accept a severance package from her employer, had insufficient funds to meet her expenses, which necessitated her cashing in stock options in order to pay her bills.

Based on this evidence, the trial court did not abuse its discretion in awarding wife a sixty-percent share of her retirement account.

## B. SPOUSAL SUPPORT

Code § 20-107.1(F) provides in relevant part that, "[i]n contested cases in the circuit courts, any order granting, reserving or denying a request for spousal support shall be accompanied by written findings and conclusions of the court identifying the factors in subsection E which support the court's order." We need not determine whether a court ordinarily may satisfy this statutory "writing" requirement by incorporating a transcript of its findings and conclusions into an order embodying its ruling. Here, husband consented to the trial court's resolving the issue in this fashion, and he may not now contend the court committed reversible error by doing so. See Fisher v. Commonwealth, 236 Va. 403, 417, 374 S.E.2d 46, 54 (1988) ("No litigant . . . will be permitted . . . to invite error . . . and then to take advantage of the situation created by his own wrong."). After the trial court made findings on the issue from the bench on December 6, 2005, husband filed a motion to reconsider in which he asked the court to make written findings on the issue of support and imputation of income. At the hearing on that motion, the court supplemented its prior oral findings from the bench. When the parties discussed the method by which they would include the court's original and supplemental oral findings of fact in the decree, the trial court said it would "prefer to have [the findings of fact] in the decree." Husband's attorney responded, "Can't you just attach the--" and the court

- 5 -

responded, "You can attach that, either way, if you want. Whatever -- whatever the two of -- if you can agree on it, fine. There should be some reference to it though." Because husband consented to attaching the transcript of the court's oral findings of fact and conclusions of law to the final decree, he may not now object to the trial court's use of that method for communicating its findings of fact and conclusions of law under Code § 20-107.1(F).

We also hold the statements made in the attachment satisfy the Code § 20-107.1(F) requirement of "identifying the factors in subsection E which support the court's order" and that the evidence supports the trial court's decision to award support of $900 per month. Decisions concerning spousal support "rest within the sound discretion of the trial court and will not be reversed on appeal unless plainly wrong or unsupported by the evidence." Calvert v. Calvert, 18 Va. App. 781, 784, 447 S.E.2d 875, 876 (1994). "'[A] trial court may impute income based on evidence of recent past earnings.'" Stubblebine v. Stubblebine, 22 Va. App. 703, 709, 473 S.E.2d 72, 74 (1996) (en banc) (quoting Brody v. Brody, 16 Va. App. 647, 651, 432 S.E.2d 20, 22 (1993)). Where a spouse changes employment and experiences a reduction in income as a result, even if he made the change in good faith, a court does not abuse its discretion by imputing to that spouse his or her prior level of income for purposes of calculating support. See Antonelli v. Antonelli, 242 Va. 152, 156, 409 S.E.2d 117, 119-20 (1991) (child support), cited with approval in Stubblebine, 22 Va. App. at 710, 473 S.E.2d at 75 (spousal support).

The evidence supported the court's decision to impute income to the parties in the amounts imputed. Wife's vocational expert testified husband was capable of earning at least $140,000 per year, and husband had actual earnings of an average of over $120,000 annually from 1998 to 2002 while in the Navy. Further, when husband was employed by a civilian dentist for eight months in 2003, his income for that period annualized at $115,500. Husband voluntarily left that employment to practice on his own. Although wife may have supported that

decision, she did so at a time when husband had not yet admitted to wife he was having an extramarital relationship and was living with his paramour and while wife remained hopeful they would reconcile. This evidence supported the trial court's decision to impute to husband a monthly earned income of $10,000. Husband's evidence that his actual earnings were significantly lower, even if accepted by the trial court, was not controlling.

The evidence also supported the trial court's decision to impute to wife the ability to earn $36,000 per year, rather than the greater sum of $85,000 to $90,000 advanced by husband. Although wife had earned substantial sums as a pharmaceutical representative in the years preceding the parties' separation, her company was bought out, and she and husband agreed she would take "a package" and a break rather than accept employment with the purchasing company. Thereafter, with husband's consent, wife obtained her real estate license and worked full-time in real estate for about a year, after which she decided to accept a job selling surgical instruments, implants, and prostheses. She received a salary of $3,000 per month and testified that she would switch to commission at the end of 2005. Wife's vocational expert testified that her age and market conditions would create a delay in her ability to re-enter the pharmaceutical sales profession, and wife testified that the demands of that job would be difficult for her both physically, because of an injury to her dominant right wrist and problems with her neck, hip, and back, and mentally, due to her chronic manic depression. The vocational expert opined that wife's position selling prostheses and implants better suited her physical and mental limitations but that it would take her eighteen months to two years to reach her previous income of $85,000 per year or approximately $7,000 per month. He testified that "depending on how the business goes and how she's able to work," she could earn "probably 1500 to $3,000 a month net pay now in that job, at least for the next six months." This evidence supported the trial court's decision to impute to wife a monthly income of $3,000 rather than the higher figure advanced by husband.

- 7 -

Finally, based on these imputed incomes and the other factors for consideration in Code § 20-107.1(E), the record supported the trial court's award to wife of spousal support of $900 per month. Wife's imputed monthly income and share of husband's military retirement pay amounted to $5,600, and wife submitted an income and expense statement asserting monthly expenses of $9,562.94,[2] for a monthly shortfall of almost $4,000. By contrast, husband's imputed monthly income of $10,000 plus his $2,600 share of the net military retirement pay, totaled $12,600, more than twice wife's monthly income of $5,600.[3] Husband claimed expenses of $8,522,[4] for a monthly excess of slightly more than $4,000.

Under these financial circumstances, combined with evidence of other factors relevant under Code § 20-107.1(E)--the 27-year duration of the marriage; the ages and physical and mental conditions of the parties, including wife's chronic manic depression and wrist injury; wife's significant monetary and nonmonetary contributions to husband's acquisition of his dental degree and the well-being of the family during husband's 24-year military career; and the decisions regarding employment made by the parties during the marriage--we hold the trial court did not abuse its discretion in awarding wife $900 per month in spousal support. Assuming without deciding that a trial court's reliance on a formula to determine spousal support is error,

---

[2] Wife claimed higher total expenses, but her figures included some portion of the home equity line debt, for which the trial court held husband was responsible.

[3] Both figures include a net amount from each spouse's share of husband's retirement benefit and a gross amount of imputed earned income. Neither party presented evidence concerning what his or her net income would be from the earnings the trial court chose to impute. Thus, this opinion relies on pre-tax figures.

[4] Husband claimed total expenses of $10,905. However, this amount included a monthly payment of $2,383 for the mortgage on the marital residence. Wife wanted to keep the marital residence, and the parties agreed wife would be responsible for this payment, thereby reducing husband's monthly expenses to $8,522.

no evidence establishes that the trial court did so in this case, and the amount of support awarded is reasonable under the circumstances.

## II.

For these reasons, we hold the trial court did not err in finding husband responsible for the contested $100,000 in debt incurred prior to the parties' final separation and in awarding husband only forty percent of wife's substantial retirement account. We also hold the court did not err in awarding wife spousal support of $900 and that the findings of fact and conclusions of law it made from the bench were sufficient to justify this award. Finally, we hold husband consented to the trial court's incorporating into the final order a transcript of the spousal support ruling it made from the bench in lieu of making written findings of fact and conclusions of law in the order itself. In light of this consent, husband may not now contend this method failed to satisfy the statutory requirement that the court make written findings and conclusions. Thus, we affirm.

Affirmed.