UNPUBLISHED

COURT OF APPEALS OF VIRGINIA


Present:   Judges Alston, McCullough and Senior Judge Annunziata
Argued at Alexandria, Virginia


YONG HUGH

v.      Record No. 1417-13-4

HYESUN HUGH                                         MEMORANDUM OPINION[*] BY
                                                   JUDGE ROSSIE D. ALSTON, JR.
HYESUN HUGH                                               JUNE 3, 2014

v.      Record No. 1438-13-4

YONG HUGH


              FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
                          Craig D. Johnston, Judge

       James Y. Victory (Hanmi Center for Justice, PLLC, on briefs), for
       Yong Hugh.

       Sae W. Lee (Soyoung Lee; Lee & Meier, PLLC, on briefs), for
       Hyesun Hugh.


       Yong Hugh (husband) appeals a final order of the trial court awarding certain assets and

spousal support to Hyesun Hugh (wife).  On appeal, husband argues that the trial court erred

i) by not distributing the parties' properties pursuant to Code § 20-107.3; ii) in setting the spousal

and child support amounts; iii) in ordering the husband to pay wife's expert's fees; iv) in

ordering husband to return personal belongings of wife; and v) by admitting a letter from Sunny

Park, a child psychologist, when the letter was hearsay.[1]  Wife filed a cross-appeal, and argues

_____

       [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

       [1] At oral argument, the parties agreed assignment of error v was moot as the trial court
has since modified custody and visitation of the parties' children.  Therefore, we do not address
this issue.

that the trial court erred in declining to value and equitably distribute the parties' interest in the business E-Tech Holdings/SM Technology, which was a marital asset, and in classifying a post-separation home equity line of credit obtained by husband in his sole name as marital debt.

We hold that the circuit court erred by failing to classify and value the parties' interest in the business E-Tech Holdings/SM Technology. In light of this conclusion, we are compelled to reverse and remand the trial court's spousal and child support awards. In addition, we hold that the trial court did not err in ordering husband to pay wife's expert's fees or return personal belongings to wife. Finally, we hold that the trial court did err in classifying two line of credit advances taken by husband post-separation as marital debt. Accordingly, we affirm in part and reverse in part and remand for further proceedings consistent with this opinion.

## I. Background[2]

The parties were married on February 2, 1997, in South Korea. Three children were born of the marriage. Throughout the marriage, wife was the primary caregiver and husband was the primary wage earner as owner of a business that he regularly dissolved and then re-incorporated under different but similar names. For purposes of clarity in this opinion we will refer to husband's business as E-Tech. While it is not readily ascertainable from the evidence, it appears that husband worked as something in the nature of a broker for the semiconductor industry; however from this rather convoluted and strained record, this Court cannot discern what or how exactly his business was conducted. In addition, the parties owned twelve real properties and several other businesses. Relevant to this appeal, three of the properties were titled in husband's name alone but were marital property.

---

[2] As the parties are fully conversant with the record in this case and because this memorandum opinion carries no precedential value, this opinion recites only those facts and incidents of the proceedings as are necessary to the parties' understanding of the disposition of this appeal.

The parties' relationship was volatile, and wife accused husband of physical and verbal abuse against her and the parties' oldest son, D.H, on multiple occasions. On February 26, 2012, wife told husband that she intended to file for divorce after he reportedly verbally berated and pushed her. On March 16, 2012, the Prince William County Circuit Court issued a protective order granting to the wife, among other things, exclusive use of the marital home. Seven days after their separation and before wife filed for divorce, husband took out a $171,000 line of credit in his name secured by a property titled solely in his name located on Lee Highway. Wife filed for divorce on March 23, 2012, requesting a divorce on grounds of cruelty pursuant to Code § 20-91(A)(6), and asking the trial court to i) grant her sole legal and physical custody of the children; ii) grant her *pendente lite* and permanent spousal support; iii) equitably distribute the parties' marital assets and liabilities; iv) enjoin husband from dissipating the parties' marital assets; and v) award wife attorney's fees. Husband filed his answer to the complaint for divorce on April 9, 2012, asking the trial court to dismiss the complaint or alternatively, to equitably distribute the parties' marital assets, award the parties joint custody of the children, and order wife to pay husband spousal and child support and attorney's fees.

The trial court entered a *pendente lite* order on May 21, 2012. The order provided, among other things, that husband would pay wife "unitary support" of $3,500 per month commencing on May 1, 2012. The order also required husband to continue to pay household expenses including the mortgage on the marital home, utilities, homeowners' association fees, and automobile payments. Additionally, husband was ordered to pay unitary support arrearages of $5,000 to wife. Wife was granted exclusive use and possession of the marital home, and the parties were ordered to stay away from one another and refrain from contact except for the sole purpose of coordinating husband's visitation with the children. Finally, the *pendente lite* order provided that "Husband shall be allowed access to the home at an agreed upon time under

presence of a third party agreed to by the parties to collect his personal items." Husband did not exercise this option to retrieve personal belongings from the marital home during the pendency of the divorce.

In July 2012, husband took an additional $160,000 advance from an existing line of credit separate from the one he opened in March 2012 secured by the Lee Highway property, and transferred the money into the parties' joint account. Husband then withdrew $150,000 and used it for undefined personal expenses. The record supports the conclusion that apparently the parties frequently took advances from that line of credit to fund living expenses.

On March 20, 2013, wife filed a petition for a rule to show cause alleging husband ceased paying the $3,500 unitary support amount commencing on February 1, 2013, in addition to failing to pay the parties' mortgage, electric and water bills, and wife's car payment. The petition also alleged that husband entered the marital home on October 14, 2012, without wife's consent, and removed a number of wife's personal items including designer bags, a Rolex watch, and jewelry.

A four-day bench trial commenced on May 5, 2013. The main issue presented in both parties' first assignments of error is the trial court's failure to classify and value E-Tech. The evidence presented by the parties regarding E-Tech came from husband's testimony and that of an expert retained by wife, Mark Vogel, C.P.A. At best, husband's testimony regarding E-Tech was vague, indefinite, and confusing. Moreover, the information that he provided to wife's expert for his valuation of E-Tech was scant and indefinable. From what can be gleaned from the record, the current name of the company is E-Tech Holdings, d/b/a SM Tech or SM Technology. The predecessor company was ISAT, which husband dissolved in June 2011 and reopened as E-Tech Holdings. At the time ISAT was dissolved and E-Tech incorporated, wife was majority (51%) owner of ISAT and husband owned the remaining 49%, however husband

ran the company. From 2011 on, husband was listed as 100% owner of E-Tech. Practically speaking, husband was E-Tech.

Husband testified at trial that E-Tech does business in America, Europe, Japan, the USA, "everywhere" and that at the time of the hearing, E-Tech had no inventory. Some of the only documentary evidence introduced included E-Tech's past tax returns. E-Tech's 2010 tax return (then incorporated as ISAT) showed $9.3 million in revenue, total income of just over $700,000, and a total profit of just under $400,000. ISAT's 2011 tax return listed revenue of $6.8 million (for the 8 months prior to its dissolution), total income of just over $400,000, total profit of $50,000, and compensation to officers of $240,000. E-Tech's 2011 tax return for the four months it was in existence that year listed revenue of $155,000, total income of just over $136,000, and total profit of negative $12,929. E-Tech's 2012 tax return reported revenue of approximately $1 million and $150,000 in losses. A list of debits from E-Tech Holdings' bank account from January 1, 2012, through December 31, 2012, showed a total of $335,000 used for personal expenses including almost all of husband's counsel's fees, support to wife, Vienna rental property condo fees, and husband's personal tax return installment payments.

Husband attributed the drastic difference in the company's performance in 2012 to "the bad economy" and testified that "the semiconductor business was not doing well at all." Husband further testified that "90% of the situation [(massive decrease in income)] came from the economic downturn – semiconductor business – was from the economic downturn, and also, I was not in a situation to run the business." Ultimately, husband testified that to him, E-Tech was worth nothing.

Wife's expert, Mark Vogel, C.P.A., also testified as to his investigation and valuation of E-tech. After the trial court admitted Vogel as an expert on business valuations, he testified that he reviewed the company website, tax returns, financial statements, the deposition transcripts of

husband and his CPA, bank statements, invoice and purchase orders, depreciation and amortization schedules, Harrell Simmer (ph) reports, and the corporate charter documents. From what Vogel could discern, E-Tech resells and refurbishes semiconductor manufacturing equipment. It was headquartered in Virginia with offices in Rockville, Maryland and Korea. The website listed equipment for sale including a scanning electron microscope among other items and states that it has "the world's largest inventory of semiconductor and manufacturing equipment parts . . . ." Vogel concluded E-Tech had an intrinsic value of $1.4 million.

Vogel used the market approach to determine E-Tech's value. He chose not to use the asset approach because he "didn't see much" in the balance sheet or in cash. This conclusion was based on the fact that the balance sheet as reported on the tax return showed "little to no inventory" and that Vogel was unable to determine why. Moreover, Vogel did not use the income approach because he was "not able to construct a projected cash flow for the company" or "determine accurately what the then income the company was producing . . . ." Vogel did testify that the market approach is a generally accepted method of business valuation among experts in the field and that it is a sound and reasonable method to value a closely-held business.

To employ the market approach to business valuation, Vogel reviewed 31 of the most comparable companies to E-Tech. Vogel testified that he did not look at any company older than ten years, and examined the size, industry, and the companies individually, to ensure they were similar to E-Tech. On cross-examination, Vogel testified that he did not find any businesses "exactly like [husband's]." However, on re-direct, Vogel testified that this frequently happens in these circumstances and in those situations he looks to the industry and gross profit margins to find comparable transactions. Vogel estimated the good will value of the business, attributable to husband, to be 30%. Therefore, Vogel's $1.4 million valuation discounted the original value of $2 million by 30%.

Finally, Vogel testified that in his opinion, the value he derived was based on "sound foundation and fact and accounting theory." However, he did acknowledge that the valuation did not meet the American Institute of Certified Public Accountants (AICPA) standards due to a limitation on the data made available to him (by husband). Those limitations included that he only had access to the financial statement for 2010 and there were discrepancies between the 2010 financial statement and the tax return in that the income on the financial statement was "more than double" what was recorded on the tax return. Vogel noted that he "had some doubts about the correctness of the tax returns as filed" because a lot of personal expenses were run through the business, and the tax returns were "prepared in a very taxable motivated fashion." Additionally, Vogel never received general ledgers or QuickBooks files, and therefore he was unable to interview management or perform a site visit. Furthermore, he was not given a complete set of bank and credit card statements as he preferred to look at five years' of financial statements. Finally, relying on the deposition transcripts of husband and his CPA, Vogel "found there's very likely a lot of personal expenses paid for by the business, and that means that's more reason why we need to get the general ledgers . . . ." Despite the limited information made available for Vogel to review, he maintained that he "believe[d] what [he] produced [at trial was] useful and . . . a reasonable estimate of the value of the company as it [was]."

Related to the valuation of E-Tech, the parties also disagreed over the classification of $183,000 that wife withdrew from an E-Tech bank account sometime after February 1, 2013. Wife testified that husband had stopped paying support and when she went to the bank, she saw there was $183,000 in an old ISAT bank account. Wife admitted that she withdrew the money and used it to pay the marital home's mortgage, other living expenses, and her attorney's fees. Husband testified that E-Tech was temporarily holding the funds from a buyer and that the money actually belonged to the seller of a piece of equipment, SM Tech Korea, a company with

which E-Tech regularly did business. Husband testified that he earned $3,000 of the $183,000 in commission from brokering a purchase, for which the buyer mistakenly sent the money to an old ISAT account, and that E-Tech was supposed to forward the remaining $180,000 of sales proceeds to SM Tech Korea. As a result of wife withdrawing the money, husband testified, SM Tech Korea filed a lawsuit against E-Tech, husband, and wife in Fairfax County Circuit Court, which was pending at the time of the parties' equitable distribution trial.

At the conclusion of the trial, to no great surprise, the trial court stated it had "insufficient evidence upon which to place a value on the marital property the parties term [E-Tech]." The trial court cited husband's testimony that he valued E-Tech at zero dollars and found that "almost all of what [Vogel] relied upon to form his opinion was not in fact correct." With respect to the $183,000 withdrawn by wife, the trial court found that the "paperwork and [husband's] testimony with respect to the paperwork and the transaction which underlies it . . . tangled and in the main unworthy of belief." For these reasons, the trial court declined to value E-Tech, subject it to equitable distribution, or equitably distribute the $183,000 withdrawn by the wife.

As to the parties' assets and liabilities, the trial court apparently adopted the parties' stipulated values, distributed the parties' real properties between them, and awarded wife the personal property remaining in the marital home. Husband was ordered to return the personal property items he took from the marital home when he entered without permission in violation of the *pendente lite* order in October 2012. Any remaining personal property was awarded to the party in whose possession it was located at the time of the trial. With respect to spousal and child support, the trial court imputed $240,000 annual income to husband and none to wife. Based on husband's imputed income, the trial court awarded wife $1,000 per month in spousal support indefinitely.

On June 25, 2013, the trial court issued a letter opinion addressing the remaining issues of child support amount and arrearages, wife's expert fees for Vogel's evaluation and testimony, and both parties' requests for attorney's fees. The trial court ordered husband to pay guideline child support to wife of $2,524 per month as well as $28,293.42 in arrearages because husband ceased paying the "unitary support" amount awarded to wife in the *pendente lite* order. The trial court further ordered husband to pay $25,000 of Vogel's expert fee because, in the court's view, husband stonewalled the expert in discovery and "the expert witness would have been able to value the business and entity now owning it had [husband] provided sufficient information for him to do so . . . ." Finally, the trial court denied both parties' requests for attorney's fees beyond that awarded to wife in the *pendente lite* order. This appeal followed.

## II. Analysis

### A. Equitable Distribution

"'A decision regarding equitable distribution rests within the sound discretion of the trial court and will not be disturbed unless it is plainly wrong or without evidence to support it.'" Mir v. Mir, 39 Va. App. 119, 125, 571 S.E.2d 299, 302 (2002) (quoting Holden v. Holden, 31 Va. App. 24, 26-27, 520 S.E.2d 842, 844 (1999)). The evidence supporting an equitable distribution award is viewed in the light most favorable to the party prevailing below and "all reasonable inferences fairly deducible therefrom." Anderson v. Anderson, 29 Va. App. 673, 678, 514 S.E.2d 369, 372 (1999) (citing Gamer v. Gamer, 16 Va. App. 335, 340, 429 S.E.2d 618, 622 (1993)).

Code § 20-107.3 provides in part:

> Upon decreeing the dissolution of a marriage, . . . the court, upon request of either party, (i) shall determine the legal title as between the parties, and the ownership and value of all property, real or personal, tangible or intangible, of the parties and shall consider which of such property is separate property, which is marital property, and which is part separate and part marital property in

accordance with subdivision A 3 and (ii) shall determine the nature of all debts of the parties, or either of them, and shall consider which of such debts is separate debt and which is marital debt. . . .

This Court has held that "[Code § 20-107.3] mandates that the [trial] court determine the ownership and value of all real and personal property of the parties[,]" however, "[t]he burden is always on the parties to present sufficient evidence to provide the basis on which a proper determination can be made, and the trial court in order to comply with Code § 20-107.3 must have the evidence before it before determining to grant or deny a monetary award." Taylor v. Taylor, 5 Va. App. 436, 443, 364 S.E.2d 244, 248 (1988) (quoting Hodges v. Hodges, 2 Va. App. 508, 516-17, 347 S.E.2d 134, 139 (1986)).

i. Valuation of E-Tech

Both parties' first assignment of error focus on the trial court's decision to not classify, value, or distribute E-Tech. While the parties have the burden of bringing forth sufficient evidence for the trial court to base its award, where there is sufficient and credible evidence as to the value of a business, a trial court must assign a value to the business when making its equitable distribution award. See id. at 443-44, 364 S.E.2d at 248-49; Peter N. Swisher, Lawrence D. Diehl & James R. Cottrell, Family Law: Theory, Practice, and Forms § 11-25, at 798 (2014 rev. ed.). There is no precise approach to the valuation of a business. Rather, courts have adopted a flexible approach that allows for consideration of the individual circumstances in each case. See Bosserman v. Bosserman, 9 Va. App. 1, 6, 384 S.E.2d 104, 107 (1989). To that end, the type or quantity of evidence required to enable a trial court to value a business is not fixed. For example, this Court has held that tax returns showing a business's gross income may be sufficient evidence from which a trial court can value a business as "[a]ssuredly, a business that has gross income can be valued." Collins v. Collins, Record No. 0862-12-4, 2013 Va. App.

LEXIS 26, at *8 (Jan. 22, 2013).[3]  Additionally, even if conflicting evidence or a range of values is presented, a trial court may still be able to value a business.  Stewart v. Despard, Record No. 1570-97-4, 1998 Va. App. LEXIS 184, at *5-6 (Mar. 31, 1998) (citation omitted) (holding that the trial court did not err in valuing the parties' business at $40,000 when wife testified it was worth $20,000, husband's expert valued the business between $60,000 and $66,000, and a nearby business had recently sold for $55,000).  Further, expert testimony is not required for a trial court to value a business.  Cox v. Cox, Record No. 3040-00-3, 2001 Va. App. LEXIS 252 (May 15, 2001) (evidence of the amount of an offer to buy a business along with lists of the business's assets and liabilities, even without expert testimony of the business's value sufficed).

The trial court in this case had a relative wealth of information regarding E-Tech from which it could have valued the business.  The trial court heard expert testimony, which valued E-Tech at $1.4 million, and husband's testimony that he valued the business at zero dollars.  Vogel reviewed the company website, tax returns, financial statements, the deposition transcripts of husband and Mr. Yu, Husband's CPA, bank statements, invoice and purchase orders, depreciation and amortization schedules, Harrell Simmer (ph) reports, and the corporate charter documents.  Vogel employed the market approach to value E-Tech, which he described as a "sound and reasonable method to value a closely-held business."  Additionally, Vogel looked at 31 of the most comparable companies to E-Tech and he estimated and factored in husband's good will, discounting the original value of E-Tech accordingly.  Despite not having all information to produce an AICPA standard value, Vogel testified that he "believe[d] what [he] produced [was] useful and . . . a reasonable estimate of the value of the company as it [wa]s."

---

[3] "Although not binding precedent, unpublished opinions can be cited and considered for their persuasive value."  Otey v. Commonwealth, 61 Va. App. 346, 351, 735 S.E.2d 255, 258 (2012) (citing Rule 5A:1(f)).

Further, the trial court received into evidence ISAT's 2010 and 2011 tax returns and E-Tech's 2011 and 2012 tax returns.

Even though the trial court had understandable doubts as to husband's credibility, as well as the professionally limited basis for Vogel's testimony, in addition to questioning the credibility of the various tax returns, the trial court was nonetheless confronted with sufficient information from which to value E-Tech. As the Court stated in Collins, "[a]ssuredly, a business that has gross income can be valued." 2013 Va. App. LEXIS 26, at *8. In this case, the trial court had more than gross income as evidence of E-Tech's intrinsic value and had the discretion to place a value within the range provided in witness testimony and documents received into evidence. See Stewart, 1998 Va. App. LEXIS 184, at *5-6 (citing Aster v. Gross, 7 Va. App. 1, 9, 371 S.E.2d 833, 838 (1988)). Therefore, we hold that the trial court erred when it did not value and distribute E-Tech.

### ii. Classification and Distribution of $183,000

Husband argued that the trial court also erred in its equitable distribution award by failing to classify and distribute the $183,000 wife admittedly withdrew from an E-Tech bank account. The evidence indicated that the $183,000 (currently the subject of litigation in Fairfax County), was an asset of either E-Tech or SM Tech Korea, however certainly not either of the parties individually. "'Property which is owned by third parties, including a corporation owned entirely by the parties, is generally not marital property subject to equitable distribution.'" Cabral v. Cabral, 62 Va. App. 600, 612 n.8, 751 S.E.2d 4, 10 n.8 (2013) (quoting 1 Brett Turner, Equitable Distribution of Property § 5:51, at 531 (3d ed. 2005)). Therefore, it was not subject to distribution pursuant to Code § 20-107.3 and the trial court did not err in refusing to distribute it as part of its equitable distribution award.

### iii. Allocation of Unsecured Debts to Husband

Next, husband argues that the trial court erred by allocating unsecured debts to him. However, husband agreed on brief that the trial court classified the unsecured debt as marital, and assigned it to husband because it was in his name and "he's the one that is going to have to pay it." According to the trial court, because it had to allocate unsecured debt in husband's name to him, it stated that it would make some form of a compensating award as a result.

"Code § 20-107.3 empowers trial courts to distribute marital debt. Because making an equitable distribution award is often a difficult task, 'we rely heavily on the discretion of the trial judge in weighing the many considerations and circumstances that are presented in each case.'" Howell v. Howell, 31 Va. App. 332, 350, 523 S.E.2d 514, 523 (2000) (quoting Moran v. Moran, 29 Va. App. 408, 417, 512 S.E.2d 834, 838 (1999) (distribution of marital debt)). "Absent an abuse of discretion, 'the trial judge's determination will not be reversed on appeal.'" Id.

Indeed, the trial court had no power to transfer or allocate debt which was not jointly owed. See Code § 20-107.3(C) ("[T]he court shall have no authority to order the division or transfer of separate property or marital property, or separate or marital debt, which is not jointly owed or owed . . . ."). The trial court indicated that it would consider that some debt had to be allocated to husband and would factor that into its overall distribution and then compensate husband in some manner. We have no reason to doubt that is exactly what the trial court did. For these reasons, we hold that the trial court did not err in allocating unsecured debt in husband's name to husband as part of its equitable distribution award.

### iv. Personal Property

Husband further assigns error to two aspects of the trial court's award with respect to personal property. First, husband argues that the trial court failed to value the parties' personal property and inequitably distributed it. In support of this argument, husband states that he was

"kicked out" of the marital home and never had a chance to reclaim all of his personal belongings from the marital residence. Therefore, according to husband, the trial court's order directing the parties to "each keep personal properties in their respective homes" resulted in an inequitable result where husband was "completely shut out of any possibility of retrieving his personal belongings located within the marital home." Second, husband assigns error to the trial court ordering him to return items he took from the marital home in October 2012 in violation of the *pendente lite* order to wife.

Code § 20-107.3 "'mandates' that trial courts determine the ownership and value of all real and personal property of the parties." Bowers v. Bowers, 4 Va. App. 610, 617, 359 S.E.2d 546, 550 (1987) (quoting Hodges, 2 Va. App. at 516, 347 S.E.2d at 139). Contrary to husband's protestations, the trial court adopted the value of the parties' personal property as calculated by husband and stipulated to by wife, and clearly distributed that property to the party in whose possession it remained. Further, husband was in fact provided an opportunity to return to the marital home and retrieve his personal belongings, as provided by the *pendente lite* order. Husband did not exercise his option to enter the marital home in an authorized manner and now cannot be heard to complain about this circumstance.

Rather, husband engaged in a form of self-help that was in violation of the *pendente lite* order by entering the marital home without permission and taking purses and jewelry belonging to wife. For these reasons, we hold the trial court did not err in valuing and distributing the parties' personal property in the manner in which it did or in ordering husband to return items he took from the home in October 2012 to wife.

### v. Post-separation Debts Incurred by Husband

Wife's second and final assignment of error asserts that the trial court erred by classifying two home equity lines of credit incurred by husband post-separation as marital debt. While the

use of marital funds post-separation is not necessarily dissipation, the burden shifts to the party who incurred the debt or "last had the funds to establish by a preponderance of the evidence that the funds were used for living expenses or some other proper purpose." Luczkovich v. Luczkovich, 26 Va. App. 702, 714, 496 S.E.2d 157, 163 (1998) (quoting Clements v. Clements, 10 Va. App. 580, 587, 397 S.E.2d 257, 261 (1990)). In this case, therefore, "husband had the burden to establish by a preponderance of the evidence that post-separation withdrawals of marital funds were used for a legitimate marital purpose." Howell, 31 Va. App. at 348, 523 S.E.2d at 522 (citing Alphin v. Alphin, 15 Va. App. 395, 402, 424 S.E.2d 572, 576 (1992)).

In Howell, the husband borrowed $70,000 from a joint line of credit post-separation and claimed he used that money for marital expenses. Id. at 347, 523 S.E.2d at 521. Husband then used money from his partnership distribution to open a new money market account, pay income taxes, and pay off a portion of the advance he took from the line of credit. The trial court in Howell classified a portion of husband's money market account as marital to make up for money advanced from the parties' line of credit, holding that paying income taxes was not a legitimate marital purpose and that he did not sufficiently prove the portion he claimed he spent on household expenses. Id. at 347-48, 523 S.E.2d at 522. This Court affirmed, holding that "[t]he husband's action of not reducing the equity line permitted the joint debt to rise while he diverted the offsetting income to accumulate as his separate asset. This turned marital expenses into marital liabilities of the couple and reduced the marital wealth available for distribution." Id. at 349, 523 S.E.2d at 522-23.

In this case, the trial court had documentary evidence of the timing and amounts of the post-separation debts incurred by husband. Wife introduced documentation of husband's Burke & Herbert loan in the amount of $171,000 taken out on March 5, 2012, and the deed of trust (in husband's name only) encumbering the Lee Highway property. Wife also introduced

documentation of the Bank of America line of credit advance of $160,000 on July 19, 2012, from husband's line of credit to the parties' marital account, and $150,000 withdrawn in cash from the parties' marital account by husband on the same day. This evidence was sufficient to shift the burden to husband to show that those funds were used for a "legitimate marital purpose." See id. at 348, 523 S.E.2d at 522.

Husband admitted that he withdrew the money and at best was vague and evasive about how it was spent. Husband did not present any specific testimony or documentation of how he used the money. Additionally, there was evidence that husband stopped paying wife's unitary support or other bills required by the *pendente lite* order from February 1, 2013 forward, belying any claim he may have made that he used the money for marital expenses.

We hold that husband failed to establish by a preponderance of the evidence that the advances were used for a "legitimate marital purpose." Just as in Howell, by increasing the balance on the Bank of America line of credit and opening a new line of credit encumbering the Lee Highway property, husband accomplished "a combined effect [that] permitted the husband to decrease the marital estate while increasing his personal estate, to distort [the parties'] financial condition to his advantage." Id. at 349, 523 S.E.2d at 523. Therefore, we hold that the trial court erred in classifying the post-separation line of credit advances as marital.

B. Spousal Support

Husband also assigns error to the trial court's spousal support award. "Where an equitable distribution award is reversed on appeal and 'the provisions with regard to the marital property are to be considered on remand, the court must necessarily re-examine spousal support in the light of whatever new or different considerations flow from the additional proceedings.'" Robinson v. Robinson, 46 Va. App. 652, 671, 621 S.E.2d 147, 156 (2005) (en banc) (quoting McGinnis v. McGinnis, 1 Va. App. 272, 277, 338 S.E.2d 159, 161 (1985)). Therefore, as the

equitable distribution award may affect the amount of spousal support, we reverse and remand the award of spousal support of $1,000 a month for consideration and determination in accordance with Code § 20-107.3.  See Stumbo v. Stumbo, 20 Va. App. 685, 694, 460 S.E.2d 591, 595 (1995) (reversing and remanding spousal support award where trial court erred by failing to classify and value all marital property); Bacon v. Bacon, 3 Va. App. 484, 491, 351 S.E.2d 37, 41-42 (1986) (reversing and remanding spousal support and equitable distribution awards where the Court reversed and remanded for reconsideration of grounds for divorce).

## C.  Child Support

Husband further assigns error to the trial court's child support determination.  The trial court ordered guideline child support based on husband's imputed income of $240,000 a year, to be adjusted based on how much is paid to wife in spousal support, based on the custody and visitation schedule.  As custody and visitation have been modified since the parties' equitable distribution trial and because we reverse and remand the trial court's equitable distribution and spousal support awards, we accordingly also remand the child support award for consideration and determination consistent with this opinion.

## D.  Expert Fees

Next, husband assigns error to the trial court's order that he pay $25,000 towards Vogel's expert witness fee incurred by wife.  "The allotment of costs and attorney's fees is a matter within the sound discretion of the trial court."  D'Auria v. D'Auria, 1 Va. App. 455, 461, 340 S.E.2d 164, 167 (1986) (citing Code § 20-99; Ingram v. Ingram, 217 Va. 27, 29, 225 S.E.2d 362, 364 (1976)).

Code § 20-79(b) provides that "In any suit for divorce, the court in which the suit is instituted or pending, when either party to the proceedings so requests, shall provide in its decree . . . counsel fees and other costs, if in the judgment of the court any or all of the foregoing should

be so decreed." Code § 20-99(6) provides that in divorce cases "[c]osts may be awarded to either party as equity and justice may require."

In its June 25, 2013 letter opinion, the trial court noted that husband stonewalled Vogel's and the trial court's efforts and that "the net result was that [husband] did not, and [wife] could not, bring before the court sufficient evidence from which the court could place a value on the entity which was a principal point in dispute [E-Tech]." However, the trial court also found that the wife's taking of the $183,000 from an E-Tech business account likewise "contributed to the parties' inability to settle the case." The trial court's findings and order with respect to Vogel's fee were reasonable and not an abuse of its discretion. Therefore, we hold the trial court did not err in ordering husband to pay $25,000 towards Vogel's fee.

III.  Conclusion

For the foregoing reasons, we hold that the trial court erred in refusing to value and distribute the parties' business known as E-Tech and in classifying two post-separation line of credit advances taken by husband as marital. Because the equitable distribution award must be remanded for consideration and determination in accordance with this opinion,[4] we also reverse and remand the spousal and child support awards. Finally, we hold that the trial court did not err in its distribution of personal property or in ordering husband to return certain personal property to wife and pay a portion of wife's expert's fee.

Affirmed in part,
reversed in part,
and remanded.

---

[4] Our holding does not require or suggest that the trial court need hold an entirely new trial in this case. As discussed, we find there was sufficient evidence on the record from which the trial court could have valued E-Tech and thus, we leave it to the trial court's discretion as to whether it conducts a new trial, permits additional discovery with or without a new trial, or rather determines the issues on remand based upon the record already before it.

- 18 -